**UNION CITY BARGE LINE, INC. and Union City Fuel Company, Inc., Plaintiff-Appellants,**

v.

**UNION CARBIDE CORPORATION, E.W. Saybolt & Company, Inc. and Gulf Coast Petroleum Products, Inc., Defendants-Appellees.**

No. 85–2878.

United States Court of Appeals, Fifth Circuit.

Aug. 3, 1987.

Ronald Cohen, Montclair, N.J., for Union City Barge Line & Union City Fuel Co.

Thomas F. Ryan, Thomas K. Cauley, Jr., Chicago, Ill., Thad Grundy, Houston, Tex., Carl A. Parker, Port Arthur, Tex., Sidley & Austin, Chicago, Ill., for Union Carbide.

Richard Frankel, Justin M. Campbell, III, Michael M. Wilson, Houston, Tex., for E.W. Saybolt.

Richard A. Goins, New Orleans, La., Bracewell & Patterson, J. Clifford Gunter, III, Carrin F. Patman, Houston, Tex., for Gulf Coast, Guidry & Nutter.

Mitchell R. Berger, Washington, D.C., Joe H. Reynolds, Houston, Tex., for Channel Fueling.

Before BROWN, RUBIN and GARWOOD, Circuit Judges.

JOHN R. BROWN, Circuit Judge:

### In the Beginning

Plaintiff-appellants Union City Barge Line (Union Barge) and Union City Fuel Company (Union Fuel) (collectively "Union City") appeal three motions for summary judgment entered against them. Union City complains primarily that it was unfairly "stonewalled" in its attempts to conduct discovery. This may be an accurate description of the pre-trial proceedings. Nevertheless, Union City's alleged injuries by the defendants are outside the purview of antitrust law relief. Accordingly, we affirm the trial court's judgment as to all defendants. We also remand for clarification the dismissal of the remaining pendant state law claim.

### Greed and the Gulf Coast

This appeal is a consolidation from three motions for summary judgment granted to defendants Union Carbide Corporation (Carbide), Gulf Coast Petroleum Products, Inc. (Gulf Coast), and E.W. Saybolt & Company, Inc. (Saybolt). A fourth defendant, Channel Fueling Company (Channel), was dismissed on a 12(b)(6) motion.[1] Channel has since settled with Union City and is no longer in the appeal. Portions of the District Court's memorandum and order granting Channel's motion for dismissal, however, are integrated into the other defendants' orders, and thus remain relevant here.

Union Barge provided towing services on the inland waterways of the Gulf Coast. Union Fuel was a midstream fueling business. It had one place of business in Port Arthur, Texas. Union City's[2] complaints focus on business transactions between Channel Fueling and Carbide. Channel, another midstream fueler, had seven locations on the Intracoastal Waterway west of the Mississippi. Carbide was a substantial user of midstream fueling services in the area where Channel and Union Fuel did—and competed for—much of their business.

In September of 1979, Channel entered into a so-called redelivery agreement with Carbide. In essence, Channel agreed to store fuel belonging to Carbide in Channel's inventory, and to "redeliver" Carbide's fuel to Carbide's vessels for a redelivery fee, varying from four to five cents per gallon. The redelivery program's selling point was convenience. Carbide could deposit fuel in any of Channel's several storage locations and later, Channel would redeliver fuel to any of Carbide's vessels at any location convenient to a Carbide vessel.

After this redelivery agreement was struck, it soon became mired in crass, unsophisticated bribery: Channel agreed to pay Carl Nutter, then a trusted employee of Carbide, one cent for every gallon of fuel redelivered to Carbide by Channel. Carl Nutter then set up Gulf Coast, a shell corporation, to receive these kickbacks and payments from Channel.[3] Union City al-

---

1. Summary judgment for two other individual defendants, Robert Guidry and Carl Nutter, is the subject of a separate appeal.

2. Except where specific identification is pertinent, we have referred to both plaintiffs generally as "Union City."

3. Carbide has since fired Nutter and brought a separate suit against him.

leged that additional motives for these secret payments were (i) to influence Carbide to terminate its towing contract with Union Barge, which Channel knew would be damaging to Union Barge's sister company, Union Fuel, and (ii) to influence Carbide to make disparaging statements about the businesses of Union Barge and Union Fuel. Because of this scheme, Union Fuel claimed that it was unable to compete for Carbide's midstream fueling business on an equal basis with other midstream fuelers.

Saybolt, the third defendant, is engaged in the business of measuring and gauging liquid petroleum products for the purpose of certifying quantities delivered by vendors to purchasers and others. Union City alleged that Carbide bribed Saybolt to induce it to falsify gauging reports so that Union Barge would appear to have pumped fuel from a Carbide barge into the fuel barge of Union Fuel while the barge was in the custody of Union Barge. Union City stated that, as a result, the contractual relationship between Union Barge and Carbide was interfered with and that Carbide ultimately decided to terminate, without justification, the towing agreement it had with Union Barge.

In September 1984, Union City filed this suit. Union Barge alleged three causes of action: (i) illegal commercial bribery, under § 2(c) of the Robinson-Patman Act, 15 U.S.C. § 13(c), against all defendants; (ii) interference with the contractual relationship between Union Barge and Carbide against Channel and Saybolt; and (iii) wrongful termination of contract against Carbide. Union Fuel alleged (i) another count of illegal commercial bribery against all defendants, under § 2(c) of the Robinson-Patman Act; (ii) interference with business relationships of Union Fuel, against all defendants; and (iii) intent to destroy the business of a competitor in violation of § 1 of the Sherman Act, 15 U.S.C. § 1, against Carbide, Gulf Coast and Saybolt.

### Undiscoverable Discovery

The course and scope of discovery in this case is at the center of Union City's appeal. Union City maintains that the District Court's "inaction" and the defendants' "stonewalling" precluded meaningful discovery. In response, defendants urge that Union City's sloppy prosecution of the case, rather than lack of cooperation on their part or error by the trial judge, is the root of any deficiency in discovery.

During the pre-trial proceedings, Union City filed a request for a discovery conference pursuant to Rule 26(f).[4] Although the language of the rule is mandatory that "the court *shall* hold a discovery conference upon request," the District Court never ruled on the motion.

A year after Union City filed its original complaints, the three defendants here on appeal filed their motions for summary judgment. Carbide and Saybolt moved in late August, Gulf Coast in late October. Union City timely opposed Gulf Coast's motion, but was over one month late in responding to Carbide's and Saybolt's motions. Union City's memoranda opposing summary judgment adopt a straddle position. In essence, Union City attempts to both rebut the motions for summary judgment on the merits, all the while reurging and "reserving" the right to file supplemental opposition to the summary judgment motions "following completion of discovery." Although Union City was far from zealous in its efforts to prosecute this case, defendants also ably avoided Union City's document requests, interrogatories and deposition requests. Unfortunately, the District Court never intervened or ruled on the competing motions to quash or compel. Indeed, the court was for all practical purposes invisible in supervising this case.

The District Court granted summary judgment for the three present defendants on November 21, 1985. The court also granted Channel's motion to dismiss.[5] In granting Channel's motion, the District

---

**4.** *See infra* note 6.

**5.** As we noted earlier, although Channel won its case, it later settled with Union City. Accordingly, it is no longer in the appeal.

Court addressed the Robinson-Patman Act claims, setting out the rationale applicable as to all defendants. In essence, the District Court stated that the payments paid to or received by the various defendants were in connection with the sale of *services*, not "goods, wares, or merchandise," as required by the Robinson-Patman Act. Accordingly, the defendants' activities all fell outside the ambit of the Robinson-Patman Act. In addition, the District Court held that neither Union Barge nor Union Fuel were "competitors" of any of the defendants, and thus could not prosecute a commercial bribery action under § 2(c) of the Robinson-Patman Act.

The court also dispensed with the state law claims, relying on *United Mine Workers v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). The court cited *Gibbs* for the proposition that "state law claims should be dismissed where the federal claims are adjudicated before trial."

In granting Saybolt's motion for summary judgment, the court announced its rationale for dismissing the Sherman Act claims against Saybolt, Carbide, and Gulf Coast. The District Court held that Union City had shown neither (i) that any of the defendants' activities caused harm to competition, (as distinct from individual injury), nor (ii) that defendants had exercised an impermissible degree of market power aimed at eliminating competition.

The third summary judgment order, issued jointly in favor of Carbide and Gulf Coast, relied on and incorporated the analysis from the other summary judgment orders for the antitrust claims.

Union City then brought this appeal.

### Uncovering the Discovery Conference

This case involves the unhappy coincidence of stunted discovery neither efficiently managed from the bench nor scrupulously prosecuted by counsel. Underneath this disturbing misalliance, however, lies the fundament that controls this case: no matter how much more discovery Union City conducts, it cannot make a sufficient showing on each essential element of its claims. Missed chances and judicial misfirings aside, we are bound to affirm. Before addressing the underpinnings that mandate our decision, however, we take up a troubling point in the record worthy, we feel, of exposition and discussion.

### (i) Rule 26(f): Do Not Put that Compass By ...

On October 2, 1985, Union City filed its motion for a discovery conference pursuant to Rule 26(f).[6]

Rule 26(f) grants a court, " 'at any time after the commencement of an action,' the right to convene a discovery conference on its own motion, and requires it to convene a conference when a party moves for it after

---

6. 26(f) *Discovery Conference.* At any time after commencement of an action the court may direct the attorneys for the parties to appear before it for a conference on the subject of discovery. The court shall do so upon motion by the attorney for any party if the motion includes:

(1) A statement of the issues as they then appear;

(2) A proposed plan and schedule of discovery;

(3) Any limitations proposed to be placed on discovery;

(4) Any other proposed orders with respect to discovery; and

(5) A statement showing that the attorney making the motion has made a reasonable effort to reach agreement with opposing attorneys on the matters set forth in the motion. Each party and his attorney are under a duty to participate in good faith in the framing of a discovery plan if a plan is proposed by the attorney for any party. Notice of the motion shall be served on all parties. Objections or additions to matters set forth in the motion shall be served not later than 10 days after service of the motion.

Following the discovery conference, the court shall enter an order tentatively identifying the issues for discovery purposes, establishing a plan and schedule for discovery, setting limitations on discovery, if any; and determining such other matters, including the allocation of expenses, as are necessary for the proper management of discovery in the action. An order may be altered or amended whenever justice so requires.

Subject to the right of a party who properly moves for a discovery conference to prompt convening of the conference, the court may combine the discovery conference with a pretrial conference authorized by Rule 16.

'a reasonable effort to reach agreement with opposing attorneys' on discovery. The party's motion must include a statement of issues and a proposed discovery schedule, along with proposed limits and orders. After the conference, the court must enter an order 'tentatively' identifying the issues for discovery, establishing a plan or schedule for discovery, setting limits on discovery, and determining whether certain action, including but not limited to cost-shifting, should be taken to manage properly the discovery process."[7]

The discovery conference was originally proposed in 1977 by a committee of the Section of Litigation of the American Bar Association.[8] After some modification, this discovery abuse mechanism was adopted as Rule 26(f) in the 1980 amendments to the Federal Rules of Civil Procedure. 85 F.R.D. 521, 526 (1980). The rule's drafters envisioned the discovery conference as a specialized tool, invoked in cases that have or potentially have significant discovery concerns. Nevertheless, the discovery conference is not limited to massive class actions or complex litigation; nor must it be used only as a last-ditch effort to put discovery on track. The rule itself contains no express restrictions on the types of cases in which it may be held. Rather, Rule 26(f) should be selectively and carefully used because, "[t]here are two defects with discovery conferences if they become commonplace. The first is that they will become valueless. The second is that there is not time enough in the world to hold them."[9]

Accordingly, the Advisory Committee Notes state that, "It is not contemplated that requests for discovery conferences will be made routinely. A relatively narrow discovery dispute should be resolved by resort to Rules 26(c) [motion for protective order] or 37(a) [motion to compel]. . . . If the court is persuaded that a request is frivolous or vexatious, it can strike it." 85 F.R.D. at 527.

Apparently, the admonition against overuse has been heeded. In a survey of reported litigation, less than fifty cases have resorted to it.[10] Although this low figure gives rise to the contrary concern—that the conference is avoided when it should be held—we assume that the scarcity of reported use is a sign only of conservative (or uneventful) use, not of ignorance of its existence. Other circuit courts have recognized the new rule with approval, and encouraged its use in an appropriate case.[11] Given the well-documented and thoroughly analyzed problem of discovery management,[12] the availability of such a promising tool should not be overlooked or rejected. Utilizing it whenever *reasonably* called for will avoid dilution of the mechanism's effectiveness, so that Rule 26(f) can remain a valued discovery control measure.[13]

---

7. Sherman & Kinnard, *Federal Court Discovery in the 80's—Making the Rules Work*, 2 Rev. Litig. 10, 39 (1981), *reprinted in* 95 F.R.D. 245, 270 (1983).

8. Report of the Special Committee for Discovery Abuse Section of Litigation, American Bar Association, October 1977, at 4–7.

9. Schroeder & Frank, *The Proposed Changes in the Discovery Rules*, 1978 *Ariz.St.L.J.* 475, 483.

10. Of course, an accurate count is impossible. Thankfully, most of the mountainous volume of the District Courts' pre-trial activity never reaches the pages of a reporter or the files of a computer.

11. *See, e.g., Poulis v. State Farm Fire & Casualty Co.*, 747 F.2d 863, 870 n. 5 (3d Cir.1984) ("We note the commendable procedure [of new Rule 26(f) ]"); *Jaquette v. Blackhawk County*, 710 F.2d 455, 463 n. 19 (8th Cir.1983) ("Conferences at the pleading stages . . . have proven success-

ful"); *Eggleston v. Chicago Journeymen Plumbers' Local Union No. 130*, 657 F.2d 890, 903 (7th Cir.1981) ("If it appears that there is a significant disagreement about discovery, it may also be worthwhile to seek a discovery conference under new Rule 26(f).").

12. Discovery management has been a central concern of the judiciary, the ABA, and commentators in recent years. *See, e.g., Manual for Complex Litigation, Second* §§ 21.1–21.6 (1985); Pollack, *Discovery—Its Abuse and Correction*, 80 F.R.D. 219 (1978); ABA Action Comm'n, *Attacking Litigation Costs and Delay* (1984); Symposium on Litigation Management, 53 *U.Chi.L.Rev.* 306 (1986).

13. At least one District Court case, *McCluney v. Joseph Schlitz Brewing Co.*, 504 F.Supp. 1264 (E.D.Wis.1981), has prudently denied a party's motion for a discovery conference. Characterizing Rule 26 as "designed to provide a framework to alleviate discovery abuses," District

### (ii) ... Or We Shall Be Lost in a Maze [14]

Having lauded the discovery conference in the abstract, we must now scrutinize it in application. The facts in this case are stark. Union City's motion for a discovery conference, pursuant to Rule 26, was filed October 2, 1985. On November 21, 1985, without holding a conference or ruling on its availability, the District Court granted the various defendants' motions for dismissal and summary judgment.

■ The language of Rule 26(f) is clear: "The court shall ... hold a conference on the subject of discovery upon motion by the attorney." We are convinced that the mandatory "shall" means what it says. Although the district court's discretion in controlling its docket is broad indeed, it cannot be used to undercut the potency of these discovery control measures.[15]

Admittedly, the rule tempers the mandatory nature of the motion by giving courts the power to strike or deny motions that involve an uncomplicated or limited discovery dispute. That was not the case here. Union City noticed twenty depositions and was able to take but two. Union City attempted but was unable to depose any representative of Carbide or Gulf Coast. Union City filed three motions to compel discovery, and moved for the entry of a protective order to use discovery from a related case.[16] In response, the defendants filed eight motions seeking protective orders, to quash subpoenas and to stay discovery. The District Court—presumably with the idea of even-handedness—never ruled on these motions either. The District Court finally granted Union City's motion for protective order, allowing it access to the discovery material from the related case. The motion was granted seven months after it was made, but only two months before summary judgment was granted. Further, the parties have argued vigorously over whether the defendants ever actually provided the discovery material covered by the protective order.

■ On these facts, we are hard put to think of a better, more appropriate case in which a discovery conference should have been held—and held much earlier than when Union City finally invoked it.[17]

Judge Myron Gordon held that "I am satisfied that the case at bar presents a discovery dispute sufficiently narrow that a discovery conference is not needed.... The better course for the plaintiff to pursue is to bring a motion to compel discovery pursuant to Rule 37(a)." At 1270.

**14.** *See Gully v. First Nat'l Bank*, 299 U.S. 109, 118, 57 S.Ct. 96, 100, 81 L.Ed. 70 (1936) (Cardozo, J.); *see also*, Note, 62 *Texas L.Rev.* 893, 907 nn. 97–98 (1984).

**15.** The leading commentators endorse this view. "Rule 26(f) mandates the holding of a discovery conference upon proper motion by a party.... The power of the court to enter orders establishing the scope, form, extent, and timing of discovery is thus clearly confirmed...." *Manual for Complex Litigation* § 1.95 (5th ed. 1982). The *Manual for Complex Litigation—Second* (1985) does not address the mandatory nature of a 26(f) motion. Rather, it seems to take for granted that a court will convene whatever "initial conferences"—including discovery conferences—are necessary, normally on its own motion. The *Manual*, with its hallmark of active judicial management during pre-trial proceedings, thus assumes that formal motions such as 26(f), made by the litigant, will rarely be needed.

*See also* 4 J. Moore, J. Lucas & G. Grotheer, Jr., *Moore's Federal Practice* § 26.85 (2d ed. 1986); *Recommendations of the American College of Trial Lawyers on Major Issues Affecting Complex Litigation*, 90 F.R.D. 207, 217 (1981); 8 C. Wright, A. Miller & F. Elliott, *Federal Practice and Procedure* § 2051 (1986). Many of these commentators point out the court's power to strike or deny a motion if it is frivolous or grounded in a narrow dispute.

**16.** Union City needed a protective order because the confidential business material discovered in the related case was itself originally placed under a protective order. Union City could thus gain access to that material only through a modification. This is what they moved for in this case.

**17.** "For example, the 'issues' for identification and possible limitation under Rule 26(f) ... in anti-trust proceedings could be such disputed matters as the nature of the agreement asserted to constitute the violation, its manifestation, its timing, the relevant product and geographical market, the time the plaintiff allegedly sustained injury from the asserted illegality, whether the plaintiff was a direct or indirect purchaser and, if an indirect purchaser, whether he bought under a cost-plus contract from one who purchased from the defendant...." *Recommendations of the American College of Trial Lawyers on Major Issues Affecting Complex Liti-*

We refuse to undercut the strength of the discovery conference rule. As a last-ditch effort to get discovery moving, Union City resorted to the discovery conference.[18] It was their right, subject to the trial court's limited supervisory discretion, to have that discovery conference held. This was not petty or contentious quibbling over one or two interrogatories. This was a fundamental breakdown in discovery between the parties, coupled with a total lack of discovery management by the court. We here state our refusal to yank the teeth out of the few hard-won discovery reform measures attained. We view the court's failure to hold the discovery conference to be error.

In this case, however, the defendants were properly dismissed on summary judgment. Discovery, or further discovery, could have offered no escape from the legal deficiencies of Union City's claims. No purpose would now be served in reversing and requiring defendants to attend a discovery conference. With an eye to judicial economy and practicality, we hold, *in this case*, that ignoring the Rule 26(f) motion turns out to be harmless error. Should a case come before us in the future, however, in which a prudently requested discovery conference motion has been ignored or denied, there is no assurance of like leniency. Our Federal Rules demand nothing less.

### Summary Discovery

We come now to Union City's principal contention: summary judgment in this case

was inappropriate because the trial court did not allow or compel adequate discovery. Union City emphasizes that there were unresolved motions to compel compliance with document requests, and to answer interrogatories, and that without this information, Union City was unable to adequately prepare its opposition to defendants' motions for summary judgment.

The record, however, does not bear this out. Although Union City could have moved for a continuance under Rule 56(f),[19] it instead chose to oppose the motions for summary judgment on the merits. Even if we treat its responses as some form of request for a Rule 56(f) continuance, Union City made no showing entitling itself to a continuance.

The continuance is a safe harbor built into the rules so that summary judgment is not granted prematurely. Rule 56(f) is usually invoked when a party claims that it has had insufficient time for discovery or that the relevant facts are in the exclusive control of the opposing party. The rule is not difficult to comply with: the party opposing summary judgment need only file the specified non-evidentiary affidavits, explaining why it cannot oppose the summary judgment motion on the merits. Given the precautionary nature of the rule, these requests ordinarily are treated and reviewed liberally. Technical, rigid scrutiny of a Rule 56(f) motion is inappropriate. *See Whittaker v. Coleman*, 115 F.2d 305 (5th Cir.1940), *Littlejohn v. Shell Oil Co.*, 483

---

gation, 90 F.R.D. at 217–18. Since Union City also pleaded a Robinson-Patman Act claim, we add that inquiry into the "goods or services" issue at an early stage was vital.

**18.** Admittedly, Union City has less than a spotless record for zealous prosecution of this case. Union City's request for discovery conference was not formally proper in every respect. Of the five requirements for a proper motion, Union City neglected to include the first element, that is, "a statement of the issues as they then appear." We do not condone Union City's careless omission of this element. Nevertheless, we feel confident that Union City's amended complaint served to articulate the issues in a specific enough manner. Furthermore, Union City did include what has been called the "critical" element in a discovery conference motion: it formally stated that it had reasonably but unsuc-

cessfully attempted to reach agreement with opposing counsel regarding a discovery plan. FRCP 26(f)(5). The request for discovery conference was thus made properly after other, informal attempts had failed. We decline to view this procedural defect as fatal to Union City's request for judicial intervention.

**19.** Rule 56(f) *When Affidavits are Unavailable*

Should it appear from the affidavits of a party opposing the motion that he cannot for reasons stated present by affidavit facts essential to justify his opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

F.2d 1140 (5th Cir.) (en banc), *cert. denied,* 414 U.S. 1116, 94 S.Ct. 849, 38 L.Ed.2d 743 (1973); *Fontenot v. Upjohn Co.,* 780 F.2d 1190 (5th Cir.1986). *Cf. Paul Kadair, Inc. v. Sony Corp.,* 694 F.2d 1017, 1029 (5th Cir.1983). In sum, Rule 56(f) looks like relief tailor-made for Union City's situation.

The expectation, then, is that we would find at least four denied Rule 56(f) motions in this appeal. The fact is that Union City never filed any Rule 56(f) motion. Although we have no duty to be indulgent with motions that do not exist, we can treat Union City's responses to summary judgment as an attempt to comply with Rule 56(f) and still affirm the District Court. *Wallace v. Brownell Pontiac-GMC Co., Inc.,* 703 F.2d 525, 527 (11th Cir.1983).

■ Union City chose to rely entirely on its unsworn memoranda to demonstrate its need for more time. Those papers contained only vague assertions that "additional discovery might link defendants to a conspiracy." Accordingly, we find this language from Judge Reavley to be right on target.

> Because the burden on a party resisting summary judgment is not a heavy one, one must conclusively justify his entitlement to the shelter of rule 56(f) by presenting specific facts explaining the inability to make a substantive response as required by rule 56(e) and by specifically demonstrating 'how postponement of a ruling on the motion will enable him, by discovery or other means, to rebut the movant's showing of the absence of a genuine issue of fact.' The nonmovant may not simply rely on vague assertions that additional discovery will produce needed, but unspecified, facts, particularly where, as here, ample time and opportunities for discovery have already lapsed.

*SEC v. Spence & Green Chemical Co.,* 612 F.2d 896, 901 (5th Cir.1980) (citations omitted). No matter how liberally we review Union City's requests for more discovery, the fact remains that it did not demonstrate any justification for postponement on a ruling. *Cf. THI–Hawaii, Inc. v. First Commerce Financial Corp.,* 627 F.2d 991, 994 (9th Cir.1980) (in absence of proper application for 56(f) continuance, "there was absolutely no reason to delay entry of judgment.")

Further, the equitable appeal of Union City's entitlement to full-blown discovery blurs the focus on two more fundamental aspects of this case: (i) the additional discovery Union City requested went only to issues which, for purposes of granting summary judgment, were *already* taken as true; and (ii) Union City failed to make a sufficient factual showing of the existence of essential elements in each of its antitrust claims.

First, § 6 of Union City's appeal brief is titled "The Unanswered Questions." It lists twelve areas in which "discovery was evaded" and the "issues obfuscated." All twelve areas deal in some way with the alleged bribes among defendants.[20] Existence of bribes was assumed in ruling on summary judgment. More discovery to prove that which is already taken as true is pointless.

Second, none of those twelve areas are related to evidentiary facts showing competitive injury (essential to the Sherman Act claim) or the "tangible" nature of the agreements (essential to the Robinson-Patman Act claim). Consequently, the Supreme Court's recent teaching in *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) is on the nose.

In our view, the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party

---

**20.** For example, Union City lists items such as:
 [1.] Channel has the cancelled checks and the documents where the amounts to be paid were computed;
 [6.] Gerald A. Cabbage, Channel's controller, has knowledge of why the payments were made; and

 [12.] Channel, Saybolt, and other have knowledge or information relative to Saybolt's under-reporting Channel's purchases.
Ant. Brief at 17–18.

[who has failed to make a sufficient showing of the existence of an element] essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning any essential element of the nonmoving party's case necessarily renders all other facts immaterial. 477 U.S. at ——, 106 U.S. at 2552–53, 91 L.Ed.2d at 273.

We have recently stated this rule from the defendant's perspective as "[i]f the movant does not bear the burden of proof, it should be able to obtain summary judgment simply by disproving the existence of any essential element of the opposing party's claim...." *Fontenot v. Upjohn Co.,* 780 F.2d 1190, 1194 (5th Cir.1986). Thus, even if discovery were had on the issues that Union City lists, summary judgment would still be proper because of its lack of proof on these essential elements.[21]

### The Sherman Tank Stalls

■ We now reach the review of Union City's antitrust claims. Union Fuel's § 1 Sherman Act claim alleged that all defendants conspired to eliminate Union Fuel as a competitor through unfair means of competition.[22] Unfair competition is not *per se* illegal, but rather is analyzed under the rule of reason. *Northwest Power Products, Inc. v. Omark Industries, Inc.,* 576 F.2d 83 (5th Cir.1978), *cert. denied,* 439 U.S. 1116, 99 S.Ct. 1021, 59 L.Ed.2d 75 (1979) (rejecting *Pick-Barth Co. v. Mitchell Woodbury Corp.,* 57 F.2d 96 (1st Cir.1932) and its progeny, which held such conduct to be *per se* violation).

The Fifth Circuit has established a two-part test for unfair competition cases under § 1 of the Sherman Act. The plaintiff must show (i) a market effect that would be prohibited under the law of mergers, and (ii) other conduct by defendants that threaten Sherman Act values. *Associated Radio Service Co. v. Page Airways, Inc.,* 624 F.2d 1342, 1351 (5th Cir.1980), *citing Omark,* 576 F.2d at 89.

■ Preliminary to such analysis, however, we must determine that Carbide is a proper defendant to Union City's Sherman Act claim. This threshold issue ends our inquiry; Union City has impermissibly attempted to impute the culpable actions of Carl Nutter to his employer, Carbide, as a means of holding Carbide liable. Respondeat superior, in any incarnation, does not extend this far. The law in this circuit is well-established: an employer is not liable for an employee's criminal acts, committed outside her or his scope of employment, if those actions injure the employer. *Standard Oil Co. v. United States,* 307 F.2d 120 (5th Cir.1962). Given the undisputed criminal nature of Nutter's conduct, and the resulting economic harm it caused to Carbide, Carbide is clearly beyond the reach of antitrust liability.

In response, Union City has relied on the Supreme Court case, *American Society of Mechanical Engineers v. Hydrolevel Corp.,* 456 U.S. 556, 102 S.Ct. 1935, 72 L.Ed.2d 330 (1981) for authority that Carbide can be held liable for Nutter's acts. The holding in *ASME,* however, is of no help whatsoever to Union City. *ASME* did state that a principal could be held liable in an antitrust context for actions taken by its agent. The Court, however, made abso-

---

**21.** We point out too, that the Supreme Court's language states "Rule 56(c) mandates the entry of summary judgment, after adequate *time* for discovery." This is a very different animal from "adequate discovery." Over one year passed from the time Union City filed suit and defendants moved for summary judgment. This was the identical time period as in *Celotex.* Although there was no claim of insufficient discovery in *Celotex,* the Supreme Court made allowance for premature motions by highlighting the availability of a Rule 56(f) continuance. 477 U.S. at ——, 106 S.Ct. at 2554, 91 L.Ed. at 276. *Accord, Fontenot,* 780 F.2d at 1194–95.

Union City did not pursue Rule 56(f) relief. On appeal,—with no formal 56(f) relief sought from or denied by the trial court—we certainly cannot say that Union City had either inadequate time for discovery or inadequate discovery.

**22.** The brief language of § 1 of the Sherman Act prohibits "every contract, combination in the form of trust or otherwise, or conspiracy in restraint of trade or commerce among the several States, or with foreign nations...." 15 U.S.C. § 1.

lutely clear that the holding in *ASME* applied solely to cases raising problems of apparent authority. 456 U.S. at 566, 102 S.Ct. at 1942, 72 L.Ed.2d at 340.

It is undisputed that Nutter acted only in his behalf, never at the behest of, or with the slightest semblance of authority from Carbide. Indeed, his actions were in his own interest, directly contrary to the interest of his employer, to whom he owed the duty of fidelity with honesty. Certainly, Channel was acting under no misapprehension [23] whatsoever that Carbide had given Nutter the authority to accept kickbacks and bribes for himself, so that Carbide could pay too much money for its fuel. It is obvious that if Channel was willing to kick back Nutter one cent for every gallon of fuel Carbide paid to have redelivered, Carbide was paying Channel at least one cent too much.[24]

*ASME* is Union City's sole authority for its theory of imputing the criminal actions of Nutter to Carbide. Since *ASME*, however, is limited to a holding that, "the apparent authority theory [of liability] is consistent with the congressional intent to encourage competition," 456 U.S. at 570, 102 S.Ct. at 1944, 721 L.Ed.2d at 342, it is simply immaterial to the issue of Carbide's liability on these facts. Having dispensed with the theory as having no basis in law, and, Union City having presented no other grounds to us for holding Carbide liable directly, we can affirm, with no further inquiry, the summary judgment in favor of Carbide. *See Standard Oil Co.*, 307 F.2d at 129.

As a matter of law, Carbide cannot be liable under the Sherman Act for its employee Nutter's wrongful actions. As to the other defendants, however, we must review the record to determine whether the District Judge abused his discretion in granting summary judgment before Union

City had completed its discovery of Saybolt and Gulf Coast. *American Lease Plans v. Silver Sand Co.*, 637 F.2d 311, 318 (5th Cir.1981). We hold that he did not, and affirm.

As we discussed above, Union City did not file any formal motion for a Rule 56(f) continuance. Nevertheless, since the rule is "infused with a spirit of liberality," we might, at least to prevent a manifest miscarriage of justice, treat the unsworn motions to compel and memoranda opposing summary judgment for Saybolt and Gulf Coast, for this limited purpose, as satisfying the requirements of Rule 56(f). But even indulging Union City to this degree, we still have little difficulty upholding the District Court's determination that no genuine issue of material fact had been raised, and that the defendants had sufficiently demonstrated their entitlement to summary judgment.

Although "the nonmovant may not simply rely on vague assertions that additional discovery will produce needed, but unspecified facts," *Spence & Green*, 612 F.2d at 901, Union City's response to Saybolt's motion was precisely this: a classic example of an inadequate, insufficient contradiction of Saybolt's well-supported motion. What—and all—it said was: "At the conclusion of discovery, there is the *possibility* that plaintiffs *may not* be able to establish facts which link Saybolt to a conspiracy to violate § 2(c) of the Robinson Patman Act or § 1 of the Sherman Act. At this stage in discovery, however, all there is to base a ruling on is what the lawyers say the facts are.... Until a complete factual record is made by permitting plaintiffs to take discovery in this case, summary judgment is not appropriate." (emphasis added)

This is the gist of the two and one-half page response opposing summary judg-

---

**23.** Under an apparent authority theory, "[l]iability is based upon the fact that the agent's position facilitates the consummation of the fraud, in that from the point of view of the third person the transaction seems regular on its face and the agent appears to be acting in the ordinary course of the business confided to him." Restatement (Second) of Agency § 261, comment a (1957).

**24.** We here point out that the redelivery kickback scheme netted Nutter a penny a gallon, while Carbide was paying Channel only four to five cents a gallon for the service. Nutter's personal greed, then, increased his employer's cost by at least 20%.

ment filed by Union City. Such a document, setting forth not even a single likely fact, apart from loose conclusory language of counsel, is inadequate either (i) to sustain a request for continued discovery or (ii) to serve as an adequate demonstration of facts reflecting the existence of a genuine issue of controverted fact. The court was entitled to conclude that it could only be viewed as essentially a meritless claim.[25]

Union City's responses in opposition to the summary judgment motions simply do not allege any facts that can remotely be treated as raising a genuine dispute about a material issue, nor, viewing them as an attempt at a Rule 56(f) motion, do they justify any postponement in ruling on the motions. Since Saybolt and Gulf Coast[26] carried their burdens of affirmatively demonstrating, in a factual manner, the lack of any such issue, summary judgment could properly be granted. We affirm the District Court's judgment on all Sherman Act claims.

### The Trouble with Trebles[27]

Union City also filed a § 2(c) Robinson-Patman Act claim.[28] Union Fuel and Union Barge alleged separate counts of commercial bribery under the Robinson-Patman Act against all defendants. The District

Court, however, found as a matter of law that Union City's injuries were beyond the purview of the Act. We agree and hold that even though the discovery in this case may be less than complete, the fact remains that no amount of discovery can transform Union City's tort claims into statutorily sufficient antitrust charges.

■ The District Court granted summary judgment for all defendants, holding that none of the questioned transactions involved "goods, wares, or merchandise," as required by § 2(c) of the Robinson-Patman Act. Relying on the "dominant nature" test, which this circuit has adopted, to determine whether the contracts or payments were primarily for goods or for services, the District Court found payments from Channel to Carbide under the redelivery program to be purely for services, not goods. *See Aviation Specialties, Inc. v. United Technologies Corp.*, 568 F.2d 1186 (5th Cir.1978); *Tri-State Broadcasting Co. v. UPI*, 369 F.2d 268 (5th Cir.1966).

On the basis of the record, we agree. The redelivery contract makes clear that Channel's obligation was to store on account and deliver Carbide's *own* fuel wherever Carbide requested. It is undisputed that, under the redelivery program, Channel never *sold* fuel to Carbide; it merely

---

**25.** For example, in *Spence & Green*, at least the plaintiff there had filed one sworn response opposing summary judgment, to argue that he had been allowed insufficient discovery to respond. The memorandum was vague and conclusory, although still more specific and detailed than Union City's. In ruling on the moving party's motion for summary judgment, the District Court in *Spence & Green* rejected the contention of insufficient discovery as "not having been sufficiently specific and otherwise as inadequate justification for Spence's failure to respond" more fully to the opposing motion. *Spence & Green*, 612 F.2d at 900–01.

**26.** Saybolt's motion was properly filed and independently supported. Gulf Coast's motion and papers, on the other hand, simply adopted and incorporated most of Carbide and Saybolt's argument as its own grounds for summary judgment. Nevertheless, because Union City's allegations of fact against Gulf Coast were as insufficient and vague as they were against Saybolt, the reasoning and decision affirming summary judgment for it is the same.

**27.** The trouble, of course, is that treble damages are so tempting. Plaintiffs waste much of their money, and a court's time, chasing claims that simply have not a Peep to do with antitrust. *See In re Municipal Bond Reporting Litigation*, 672 F.2d 436, 440 n. 7 (5th Cir.1982).

**28.** *Payment or acceptance of commission, brokerage or other compensation.* It shall be unlawful for any person engaged in commerce, in the course of such commerce, to pay or grant, or to receive or accept, anything of value as a commission, brokerage, or other compensation, or any allowance or discount in lieu thereof, except for services rendered in connection with the sale or purchase of goods, wares, or merchandise, either to the other party to such transaction or to an agent, representative or other intermediary therein where such intermediary is acting in fact for or in behalf, or is subject to the direct or indirect control of any party to such transaction other than the person by whom such compensation is so granted or paid. 15 U.S.C. § 13(c).

transported and delivered Carbide fuel from one site to another. Deft. Motion S.J., Exh. E. Union City's conclusory allegations ignore the clear service nature of the agreement and the absence of contradictory evidentiary facts. Instead, Union City contends only that dominant nature is not a determination "well-suited" to summary judgment.[29]

 Union City's § 2(c) Robinson-Patman Act claim against Saybolt suffers from a similarly fatal defect. Union City concedes in its complaint the nature of Saybolt's business, stating "Saybolt is engaged in the business of measuring and gauging liquid petroleum products for the purpose of certifying quantities delivered to purchases from vendors." The payments allegedly made to Saybolt were, according to Union City, for the purpose of causing Saybolt "to falsify reports on its fuel gauging *services*." Even assuming Channel made payments to Saybolt, those payments were clearly made in connection with service contracts, not in connection with the sale or purchase of goods, wares, or merchandise. Simply stated, Union City has never disputed the fact that Saybolt's contracts with Channel were for anything but fuel gauging services.

 We also affirm summary judgment for Gulf Coast on the Robinson-Patman Act claim, although on a much more narrow

ground. Union City's factual showing is clearly strong enough to withstand summary judgment on a commercial bribery claim. Union City alleged, however, that Gulf Coast only received kickbacks derived from the redelivery agreement. As we discussed above, the dominant nature of redelivery is a service, not a good. Thus, Gulf Coast's admittedly unlawful actions fall outside the statute's commercial bribery reach. *See May Department Store v. Graphic Process, Co.*, 637 F.2d 1211, 1214–16 (9th Cir.1980).

### The Pendant Edition

In its order dismissing Channel, the District Court relied on *United Mine Workers v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218, 229 (1966), to dispose of the state law claims.[30]

Quoting from *Gibbs*, "certainly if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well," the District Court treated *Gibbs* as stating a rigid rule and therefore dismissed the claims. The court incorporated this reasoning into its other orders granting summary judgment for the remaining defendants.[31]

 A District Court may exercise pendant jurisdiction over a state law claim if the court already has jurisdiction over a

---

**29.** A review of the reported cases demonstrates that dominant nature can properly be disposed of on summary judgment. *See, e.g., Aviation Specialities, Inc. v. United Technologies Corp.,* 568 F.2d 1186 (5th Cir.1978) (summary judgment entered for defendant because sale of embodied parts woven into general repair agreement not a good); *Tri-State Broadcasting Co. v. UPI,* 369 F.2d 268 (5th Cir.1966) (news information service a service); *Satellite Television and Associated Resources, Inc. v. Continental Cablevision,* 714 F.2d 351 (4th Cir.1983), *cert. denied* 465 U.S. 1027, 104 S.Ct. 1285, 79 L.Ed.2d 688 (1984) (dominant nature of transaction was broadcasting, a service); *Freeman v. Chicago Title & Trust Co.,* 505 F.2d 527 (7th Cir.1974) (title searches and insurance are services); *Baum v. Investors Diversified Services,* 409 F.2d 872 (7th Cir.1969) (mutual fund is not a commodity). Union City has not sufficiently demonstrated that the nature, dominant or otherwise, of the redelivery contract and the gauging services was anything but of service.

**30.** In the original complaint, Union Barge's state claims were for (i) interference with a contractual relationship, against Saybolt; and (ii) wrongful termination of contract, against Carbide. Union Fuel's state claim was for interference with its business relationships, against Carbide, Saybolt and Gulf Coast.

In its memoranda in opposition to summary judgment, however, Union City stipulated that both of Union Barge's pendant claims should be dismissed. This stipulation, of course, acts to waive Union Barge's right to appeal those claims here. Thus, only Union Fuel's tort claim is before us.

**31.** Even though the Union City had already voluntarily dismissed Union Barge's state charges, the District Court nevertheless purported to rule on them. We need not consider the effect of the District Court's reading of *Gibbs* on those claims. Union City's voluntary dismissal renders the rulings nugatory.

"substantial" federal claim, if the state and federal claims are derived from a "common nucleus of operative fact," and if the claims are such that a plaintiff "would ordinarily be expected to try them all in one judicial proceeding." *Gibbs*, 383 U.S. at 725, 86 S.Ct. at 1138, 16 L.Ed.2d at 228.

■ In this case, the District Court had jurisdiction to hear the federal antitrust claims, which centered on allegations of illegal business transactions. Union City's remaining state claim was also grounded in this "common nucleus of operative fact." Accordingly, we conclude that the District Court had the discretion to exercise pendant jurisdiction over the state law claim. Regardless of the summary judgments granted on the federal claims, the court certainly *could* have retained the state claim under its pendant jurisdiction. For purposes of pendant jurisdiction, "substantiality" is determined by whether the federal claims are more than frivolous. *See Transource International, Inc. v. Trinity Industries, Inc.*, 725 F.2d 274, 285 (5th Cir.1984), *citing Jackson v. Stinchcomb*, 635 F.2d 462, 471 (5th Cir.1981). "It is well-settled that the federal district court has the *power* to hear pendant state claims even though it has disposed of the federal claim that originally invoked its jurisdiction." *Breen v. Centex*, 695 F.2d 907, 914 (5th Cir.1983).

■ The analysis in *Breen* is particularly instructive here. In *Breen*, the District Court entered summary judgment on the federal claims and subsequently dismissed the state claims without prejudice. On appeal, this court remanded because it was unclear whether the District Court had dismissed the state claim on grounds of lack of jurisdiction or whether the court dismissed the claim simply as a matter of judicial discretion. We held that if the dismissal was based on a discretionary decision, it would be reviewed on appeal under the "abuse of discretion" standard. If the District Court operated under a belief that *Gibbs* compelled dismissal of the state claim, however, that decision constituted error. 695 F.2d at 914. Because of "the ambiguous nature of the District Court's

judgment and the necessity of allowing the District Court to consider an issue apparent in the record but not adequately briefed by the parties on appeal, ... this court refuse[d] to address the propriety of the dismissal of appellants' pendant claims." *Id.*

We find this reasoning applicable to the state claims here. In dismissing Union Fuel's charge of tortious interference with a business relationship, the court held that it had "concluded that it should be dismissed because the federal claim had been adjudicated before trial." Because it is unclear whether the District Court read *Gibbs* to mean that the court was compelled to dismiss, or whether it was simply exercising its discretion to dismiss, we must remand so that the District Court can articulate its holding on this claim. *See Hagans v. Lavine*, 415 U.S. 528, 545–46, 94 S.Ct. 1372, 1383, 39 L.Ed.2d 577, 592–93 (1974) (and cases cited therein); *Rosado v. Wyman*, 397 U.S. 397, 405, 90 S.Ct. 1207, 1214, 25 L.Ed.2d 442, 452 (1970).

Should the District Court decline to hear the state claims under its pendant jurisdiction, we assume that its dismissal will be without prejudice, so that Union City may pursue relief in the state courts.

### The Bitter End

Admittedly, this case is an unsatisfying concoction of real injuries, wrong remedies, and too many bystanders. As we have suggested, Union City may well have valid state-based tort claims. Nevertheless, summary judgment on the antitrust claims is affirmed. The pendant state law claims against all defendants are remanded for amplification by the District Court.

AFFIRMED IN PART; REMANDED.

ALVIN B. RUBIN, Circuit Judge, dissenting:

Having delivered a homily on the virtues of the discovery conference and the importance of judicial management in accordance with the Federal Rules of Civil Procedure, my brothers promptly prove the difference between preaching and practice by affirming a judgment so summary that it denies

the plaintiff, Union City Barge Line, Inc., the opportunity to conduct discovery so that it might adduce evidence in support of its claim and thus gain a trial on the merits. This decision is based on the thesis that Union City "failed to make a sufficient *factual showing* of the existence of essential elements in each of its antitrust claims." Yet it could not make such a factual showing of evidence in the possession of its adversary without discovery.

The opinion buttresses its circuitous reasoning by pointing to areas in which Union City stated that "discovery was evaded" and the issues were "obfuscated," and finding that the facts Union City stated that it hoped to discover were inadequate to support a claim. This assumes that a party should know before discovery exactly what it hopes to uncover. If so, then the very name of the process is misleading, for in fact one can only "discover" the unknown. The Federal Rules of Civil Procedure clearly recognize this, for Rule 26 permits "discovery regarding any matter, not privileged, which is *relevant* to the subject matter involved in the pending action," and states, "It is not ground for objection that the information sought will be inadmissible at the trial if the information sought appears *reasonably calculated to lead to the discovery of admissible evidence.*"[1]

The conclusion, without knowing what discovery might disclose, that "no matter how much more discovery Union City conducts, it cannot make a sufficient showing on every essential element of its claims," assumes the premise. The majority never state how they know what admissible evidence discovery would uncover, for the only basis for their surmise is Union City's inability to state precisely what it expects to find. On that basis, Christopher Columbus' voyage should be a nullity for he found, or to put it more accurately, discovered, something far different from what he expected.

The majority find that Union City is not entitled to "full-blown discovery." It has had no real discovery at all. And it is entitled to real—even full-blown—discovery on all issues before its complaint, which admittedly states a cause of action, is doomed by a summary judgment on the basis that there is no genuine issue of any material fact. I therefore respectfully dissent.

I.

Union Barge did not sit idly by. It was repeatedly delayed or frustrated by the defendants and the district court. The record discloses the following:

1. After the complaint was filed on September 14, 1984, the three principal defendants filed motions for extensions of time to plead. These were granted without opposition. Then Channel Fueling and Union Carbide filed motions for further extensions. Again, without opposition, these were granted. Three defendants filed their answers by December 3, 1984. Some of the defendants then filed motions to dismiss, on which skirmishing continued for some time.

2. On January 17, 1985, Union Barge filed a motion for a protective order in order to obtain materials discovered in a related suit. On the same day, three of the defendants objected. Thereafter, two more also objected.

3. On August 16, the court granted Union Barge's motion to obtain materials from the related suit. Soon thereafter Channel Fueling sought reconsideration of this order, but the court did not rule on this motion.

4. On August 21, 1985, Union Barge filed notices that it intended to take depositions of Channel Fueling and three individuals.

5. The next day, defendants E.W. Saybolt and Union Carbide filed a motion for summary judgment.

6. On June 3, Channel Fueling filed a motion for a protective order staying discovery. Union Barge filed its opposition two months later.

7. On September 10–12, Union Barge filed notices that it wished to depose twelve

---

1. Fed.R.Civ.P. 26(b)(1) (emphasis added).

more officers or employees of the defendants and two other corporations.

8. On September 18, Channel Fueling filed a motion to quash the deposition of its officers and employees.

9. On September 27, Union Barge sought sanctions against Channel Fueling for failure to comply with its discovery requests or, in the alternative, an order compelling discovery.

10. None of these motions having been ruled on, the plaintiffs filed a request for a discovery conference on October 2.

11. On October 8, Channel Fueling objected to Union Barge's discovery attempts.

12. On October 10, Channel Fueling objected to a discovery conference, and Union Carbide sought a protective order barring all "further discovery."

13. On November 4, Union Barge filed motions to compel E.W. Saybolt and Union Carbide to comply with its discovery motions.

14. Having acted on none of these motions, save ordering the production of material from the related suit, the district court entered a final judgment on November 21.

Thus, although Union City had noticed twenty depositions, it succeeded in obtaining only two. It was never able to depose the officials of any of the defendants, and was unable to depose any representative of either Union Carbide or Gulf Coast. Although it had filed three motions to compel discovery, the district court ruled on none save to grant, somewhat belatedly, permission to use the related-case material. Despite this order, it is not clear whether this material was ever produced. The defendants filed eight motions to obtain protective orders, quash subpoenas, and stay discovery. The district court ruled on none.

## II.

The majority correctly conclude that "[t]his was a fundamental breakdown in discovery between the parties, coupled with a total lack of discovery management by the court." I therefore agree with the majority's statement: "[w]e view the court's failure to hold the discovery conference to be in error."

Nonetheless, the majority promptly proceed to hold that error—indeed, series of errors—harmless. This finding, made in the name of "judicial economy and practicality," relies partly on Union City's failure to comply literally with Rule 56(f) in seeking a continuance. Union City did not present, as required by Rule 56(f), affidavits stating the reasons why it could not then present facts justifying its opposition to summary judgment. This court, however, has never insisted on literal compliance with Rule 56(f).[2] Moreover, the majority cite with approval an opinion in which the Eleventh Circuit also overlooked failure to seek a continuance in Rule 56(f) terms.[3] Summary judgment should be "otherwise appropriate" before the court rests on Rule 56(f).[4]

The majority also find that, even if we "treat Union City's responses to summary judgment as an attempt to comply with Rule 56(f)." no amount of future discovery would lend sufficient support to Union City's claims. As the Supreme Court stated in *Celotex Corp. v. Catrett*,[5] however, summary judgment for failure to marshal evidence in support of a claim is warranted only "after adequate time for discovery." The requirement of adequate time for discovery certainly implies that proper discovery requests are granted. Indeed, as the Court there noted, "The parties had conducted discovery, and no serious claim can be made that respondent was in any sense 'railroaded' by a premature motion

---

**2.** *See Littlejohn v. Shell Oil Co.,* 483 F.2d 1140, 1145–46 (5th Cir.) (en banc), *cert. denied,* 414 U.S. 1116, 94 S.Ct. 849, 38 L.Ed.2d 743 (1973); *XRT, Inc. v. Krellenstein,* 448 F.2d 772 (5th Cir. 1971).

**3.** *Wallace v. Brownell Pontiac-GMC Co.,* 703 F.2d 525, 527 (11th Cir.1983).

**4.** *Pasternak v. Lear Petroleum Exploration, Inc.,* 790 F.2d 828, 832–33 (10th Cir.1986).

**5.** 477 U.S. 317, ——, 106 S.Ct. 2548, 2552–53 (1986).

for summary judgment." [6] Union 'Barge has perhaps not been railroaded but it has certainly been shipped downriver.

The Supreme Court reminded us, in *Poller v. CBS, Inc.*,[7] that "[s]ummary procedures should be used sparingly in complex antitrust litigation where motive and intent [and here anticompetitive impact] play leading roles [and] the proof is largely in the hands of the alleged conspirators." This does not, of course, mean that summary judgment should never be granted in such cases, but it does caution that the *coup de grace* should be administered only after a fair chance for discovery is afforded. As this court observed recently in *Sutton v. United States*,[8] "The summary judgment process, in which affidavits and depositions, both pro and con, are submitted will reveal exactly what facts exist, not just what the parties generally claim to exist."

The issue before us is not whether Union City should prevail or even whether it should escape summary judgment if it fails to show the existence of a genuine dispute of material fact after having a reasonable chance to do so. Union City was denied its right under the Federal Rules to the fair and efficient handling of its suit. It was denied its right to discovery. It is nonetheless thrown out of court because, on appeal, without an adequately developed record and in the face of recognized and branded error, the majority suppose that they know not only what Union City might have learned had it been accorded its rights initially, but also that this evidence would not have created an issue sufficient for trial. From such a conclusion I must respectfully dissent.

---

**6.** *Id.* at ——, 106 S.Ct. at 2554.

**7.** 368 U.S. 464, 473, 82 S.Ct. 486, 491, 7 L.Ed.2d 458 (1962). *See also Indusrial Inv. Dev. Corp. v. Mitsui & Co., Ltd.*, 671 F.2d 876, 884 (5th Cir.

1982), *vacated on other grounds*, 460 U.S. 1007, 103 S.Ct. 1244, 75 L.Ed.2d 475 (1983).

**8.** 819 F.2d 1289, 1299 (5th Cir.1987).