Anthony A. GASTON, Sr. and Janice M. Gaston, Individually, and as Next Friend of Justin D. Gaston and as Representative and Heirs of the Estate of Anthony A. Gaston, Jr., Deceased Plaintiffs

v.

HOUSTON COUNTY, TEXAS; James Oscar (Jimbo) Rains, Individually and as Former Sheriff of Houston County, Texas; the City of Crockett, Michael George Reed, Individually and as Director of the City of Crockett Water Treatment Plant; and Billy W. Horn, Individually and as City Administrator of the City of Crockett, Texas Defendants

No. CIV.A. 9:01–CV–188.

United States District Court,
E.D. Texas,
Lufkin Division.

Dec. 4, 2001.

Ronad L. Bair, Bair & Fountain, Houston, TX, for Plaintiffs.

Robert Scott Davis, Craig D. Zipps, Flowers Davis LLP, Tyler, TX, Bary Abrams, Stefanie Strayer Orr, Ramon Gustave Viada III, Abrams Scott & Bickley, Houston, TX, for Defendants.

## MEMORANDUM OPINION

COBB, District Judge.

Before the court are Defendants Horn and Reed's Motion for Judgment on the Pleading [Dkt # 4] and Defendant City of Crockett's Motion for Judgment on the Pleadings [Dkt # 5], and the court having reviewed the motions and responses on file is of the opinion that the motions be GRANTED with regard to the Plaintiffs' federal claims. The court declines to exercise supplemental jurisdiction over the Plaintiffs' remaining state law claims and severs and remands these claims back to state court.

The plaintiffs, Anthony Gaston, Sr. and Janice Gaston (the "Gastons") filed suit on behalf of themselves and as next of friends of their son Justin Gaston and as representative of the estate of Anthony Gaston, Jr. against the defendants in state court on June 26, 2001. There are several defendants: (1) Houston County, TX; (2) James Oscar (Jimbo) Rains, individually and as former sheriff of Houston County; (3) the City of Crockett, TX; (4) Billy Horn, individually and as city administrator for the City of Crockett, TX; and (5) Michael Reed, individually and as director of the water treatment plant for the City of Crockett, TX. The defendants removed this case to federal court on July 25, 2001. The defendants, Horn and Reed, filed their motion for judgment on the pleadings arguing that the Gastons' complaint failed to state a claim upon which relief could be granted because Horn and Reed are protected be qualified immunity. The City of Crockett also filed a motion for judgment on the pleadings asserting that the Gastons' allegations do not state a claim for a violation of a federal right.

## I. Background

When ruling on a defendant's motion for judgment on the pleadings, the court must

accept as true all of the plaintiff's well-pled allegations. *St. Paul Ins. of Bellaire v. AFIA Worldwide Ins.*, 937 F.2d 274, 279 (5th Cir.1991). As such, the facts as alleged by the Gastons in their complaint show the following: In 1999, John David Brown sat incarcerated in the Houston County Jail awaiting transfer to the Texas Department of Correction's facility in Huntsville, TX. Brown had been convicted of criminal assault of a staff member of the Texas Youth Commission. Before his transfer to the state penitentiary, Brown, along with several other inmates, worked at the City of Crockett's waste treatment plant, which was under the supervision of Reed. Reed would transport Brown and the other inmates to the water treatment plant in his own personal vehicle. While at the plant, the inmates were expected to perform various jobs at the plant for the benefit of the City of Crockett. Horn and Sheriff Rains worked out this arrangement.

On several occasions during June of 1999, Reed would pick up Brown and the other inmates from the Houston County Jail and drive them to the plant. Reed possessed no training or experience as a corrections officer. No corrections officer accompanied Reed and the inmates during the trips to and from the jail and the plant. Likewise, no corrections officer supervised the inmates work while at the plant. In fact, for the most part, Reed failed to supervise the inmates while at the plant and they were allowed to wander freely around the plant.

On June 28, 1999, Reed arrived at the jail to take Brown and two other inmates to the plant. The three inmates took their personal possessions with them to the plant and simply explained this behavior by telling Reed that they were afraid their possessions would be stolen if they left them in the jail. The inmates also told Reed that they intended to steal his vehi-

cle. Reed ignored this threat and transported the men to the plant and let them go about their work, unsupervised. On this particular day, Reed left the keys to his car in the ignition and, at some point, Brown and another inmate took Reed's car and escaped.

Brown fled to Harris County, where his mother was known to reside. In August of 1999, over a month after his escape, Brown encountered Anthony Gaston, Jr. and Justin Gaston while driving in Harris County. Brown shot Anthony in the head and shot at Justin who was in the passenger seat, but missed. Anthony died shortly thereafter. Brown was later apprehended, tried, and convicted of the murder of Anthony Gaston, Jr.

The Gastons filed suit in state court against the various defendants raising state claims and federal causes of action under 42 U.S.C. § 1983 for violations of the Fifth and Fourteenth Amendments. The defendants timely removed the case to federal court on July 25, 2001.

## II. The Gastons' Federal Claims against Horn and Reed

■ Horn and Reed argue the Gastons failed to state a federal claim upon which relief may be granted because they enjoy qualified immunity. Qualified immunity "reconcile[s] two competing interests. One interest is the compensation of persons whose federally protected rights have been violated. Opposing this is the fear that personal liability will inhibit public officials in the discharge of their duties." *Johnston v. City of Houston*, 14 F.3d 1056, 1059 (5th Cir.1994). The Fifth Circuit has noted that the "[a]brogation of qualified immunity is properly the exception, not the rule." *Foster v. City of Jackson*, 28 F.3d 425, 428 (5th Cir.1994). The analysis of a qualified immunity claim requires the court: (1) to determine whether the plaintiff has alleged a violation of a clearly

established constitutional right and (2) if so, then the court must decide if the defendant's conduct was objectively reasonable. *Rankin v. Klevenhagen,* 5 F.3d 103, 105 (5th Cir.1993). If the plaintiff fails to allege a violation of a clearly established constitutional right, the court need not consider the reasonableness of the defendant's actions. *See Williams v. Bramer,* 180 F.3d 699, 702 (5th Cir.1999) (stating that only if the plaintiff alleges a violation of a constitutionally protected right does the court need to inquire about the objective reasonableness of the actor's conduct); *Salas v. Carpenter,* 980 F.2d 299, 305–06 (5th Cir.1992) (calling the first prong a "threshold" issue for the court).

To begin the analysis, the court must review the Gastons' complaint to determine whether they allege conduct that violates clearly established federal rights. In so doing, a right is clearly established "only when its contours are sufficiently clear that a reasonable official would have realized that his conduct violated that right, not simply that the conduct was otherwise improper." *Doe v. Taylor Indep. Sch. Dist,* 15 F.3d 443, 454–55 (5th Cir.1994) (en banc).

The Gastons attempt to overcome Horn and Reed's qualified immunity claim and thereby demonstrate a violation of a clearly established federal right by arguing the "state created danger" doctrine, recently adopted by the Fifth Circuit in *McClendon v. City of Columbia,* 258 F.3d 432 (5th Cir.2001), defeats the qualified immunity defense. In *McClendon,* the Fifth Circuit, citing *DeShaney v. Winnebago County Department of Social Services,* 489 U.S. 189, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989), recognized that in general, state and local governments are under no affirmative duty to protect persons from acts of private citizens, but stated that *DeShaney* suggested that had the state created the danger, the plaintiff might have been able to recover. *McClendon,* 258 F.3d at 436–37. While the Fifth Circuit has discussed the doctrine on several occasions,[1] the *McClendon* decision was the first time the Circuit explicitly adopted and enforced the theory. *Id.* at 436.

In *McClendon,* Peter McClendon filed suit against the City of Columbia, MS and one of its police officers, James Carney, alleging a deprivation of his substantive due process and equal protection rights. On July 12, 1993, Kevin Loftin shot Peter McClendon with a gun he had received from Officer Carney. Loftin was a confidential informant for the Columbia Police Department and worked directly with Carney. Loftin informed Carney that he was worried about a possibility of violence between himself and McClendon because McClendon was angry with Loftin for supplying a gun to someone who shot McClendon's cousin. Carney then gave Loftin a gun to use as protection. About a week later, Loftin used the gun to shoot McClendon in the face. *Id.* at 434

Using the state created danger doctrine, McClendon claimed that Carney knowingly and affirmatively created a dangerous situation by providing Loftin with a gun when he was aware that violence was likely to erupt between Loftin and McClendon. The magistrate judge granted Carney's

---

1. This court is aware of at least six instances where the Fifth Circuit considered the "state created danger" doctrine and rejected the theory based on the facts of the particular case. *See Piotrowski v. City of Houston (II),* 237 F.3d 567 (5th Cir.2001) (considering and rejecting the state created danger doctrine); *Saenz v. Heldenfels Brothers, Inc.,* 183 F.3d 389 (5th Cir.1999) (same); *Doe v. Hillsboro Indep. Sch. Dist.,* 113 F.3d 1412 (5th Cir. 1997) (same); *Randolph v. Cervantes,* 130 F.3d 727 (5th Cir.1997) (same); *Piotrowski v. City of Houston (I),* 51 F.3d 512 (5th Cir.1995) (same); and *Johnson v. Dallas Indep. Sch. Dist.,* 38 F.3d 198 (5th Cir.1994).

motion for summary judgment, but the Fifth Circuit reversed and adopted the state created danger doctrine. *Id.* at 435–36.

While the state created danger doctrine is a new theory for the judges in the Fifth Circuit, this court believes the facts of the Gastons' case do not fit the requirements of the doctrine. Fifth Circuit case law teaches that the recision of qualified immunity is the exception to the rule, *Foster,* 28 F.3d at 428, and while under certain circumstances, the state created danger doctrine provides a plaintiff with an appropriate vehicle to set aside qualified immunity, this case does not present such circumstances. Again, this doctrine, in certain situations, will allow a plaintiff to recover from an individual that would otherwise enjoy qualified immunity, but if interpreted too broadly, the theory has the potential to destroy the defense of qualified immunity.

■ The facts of the *McClendon* case differ greatly from the facts of the present case. In *McClendon,* the officer gave a gun to his confidential informant after the informant told the officer he needed protection from Peter McClendon because McClendon was angry at the informant for supplying a gun to someone who used it to shoot McClendon's cousin. *McClendon,* 258 F.3d at 434. A few days later, the informant used the gun given to him by the officer to shoot Peter McClendon. *Id.* Thus, the officer, in *McClendon,* armed an individual knowing the gun would likely be used against a particular individual in the near future. As such, the officer knowingly increased the danger that a particular individual faced. Whereas, Horn and Reed's actions did not increase the danger faced by a particular individual in the near future. Anthony Gaston, Jr. was a tragic, but random victim of a crime that occurred six weeks and more than one hundred miles away from any action taken by Horn and/or Reed.

## A. Other Fifth Circuit Case Law

While the Fifth Circuit has not written extensively on the state created danger doctrine, the court's decisions point towards only applying the theory in cases where a state actor knowingly increased the danger to a particular individual. For example, in *Piotrowski v. City of Houston (I),* while refusing to adopt the theory, the Fifth Circuit set out the elements a plaintiff would need to demonstrate to qualify for relief under the doctrine: 1) "a plaintiff must show that the state actors increased the danger *to her*" and 2) "a plaintiff must show that the state actors acted with deliberate indifference." 51 F.3d 512, 515 (5th Cir.1995) (emphasis added).

In *Johnson v. Dallas Independent School District,* unfortunately another case involving a young man by the name of Gaston who was killed by a stray bullet, the plaintiffs attempted to hold a school district and one of its principals liable under the state created danger doctrine for the death of Andrew Gaston. 38 F.3d 198, 199 (5th Cir.1994). In this case, a non-student came on to campus and fired several shots with one of the bullets striking and killing Andrew Gaston. *Id.* In rejecting the plaintiffs' state created danger argument, the Fifth Circuit stated that "[a]ctual knowledge of a serious risk of physical danger *to the plaintiff* has been a common feature of the state-created danger cases." *Id.* at 201 (emphasis added).

Finally, the Fifth Circuit refused to apply the state created danger doctrine in *Saenz v. Heldenfels Brothers, Inc.,* 183 F.3d 389 (5th Cir.1999), where a drunk driver killed two and injured three others in a head-on-collision. *Id.* at 390. In *Saenz,* minutes before the accident, Deputy Sheriff Gonzalez and Reserve Deputy

Martinez pulled up behind a red pick up being driven by Jose Zuniga that was stopped at a stop sign. *Id.* Because the officers sat behind Zuniga at the stop sign for approximately fifteen minutes, Martinez suspected Zuniga was intoxicated and wished to investigate. *Id.* Gonzalez, the ranking officer, rejected the idea to investigate, stating that Zuniga is "always drunk and I always stop the guy. So just leave him alone." *Id.* A few minutes later, the dispatcher called the officer to the crash scene. *Id.* In affirming the district court's grant of summary judgment in favor of the county and the deputy, the Fifth Circuit stated that "[t]his 'state-created danger' theory is inapposite without a known victim." *Id.* at 392. Then, in comparing the case to the facts in *DeShaney*, the court wrote that "[i]f a state officer has no duty to protect an identified person from a known danger presented by a third party, he cannot offend due process by permitting an intoxicated driver to remain on the highway, thereby increasing the risk of harm to unidentified and unidentifiable members of the public." *Id.*

## B. Supreme Court Case Law

Requiring the state actor's conduct to increase the danger to a particular person before the doctrine would be applied seems to be consistent with the Supreme Court's holding in *Martinez v. California*, 444 U.S. 277, 100 S.Ct. 553, 62 L.Ed.2d 481 (1980). *Martinez*, a case decided before *DeShaney*, but not contrary to it, involved the torture and killing of a fifteen year old girl by a man paroled by the state five months earlier. *Id.* at 279-80, 100 S.Ct. 553. The parolee had been convicted of attempted rape. *Id.* at 279, 100 S.Ct. 553. Five years later, fully aware of his history, propensities, and the likelihood that he would commit another violent attack, the state chose to parole this man. *Id.* Furthermore, in coming to the decision to release him on parole, the parole board

failed to observe certain "requisite formalities." *Id.* While acknowledging that the decision to release the man from prison was state action, the Supreme Court held that this man's actions five months later "cannot fairly be characterized as state action." *Id.* at 284-85, 100 S.Ct. 553. The Court went on to state that "the parole board was not aware that [the victim] as distinguished from the public at large, faced any special danger [from this man's release]." *Id.* at 285, 100 S.Ct. 553. Accordingly, the Court refused to hold the state liable for this tragic incident.

## C. Case Law from Other Circuits

Finally, a review of the case law from other circuits that have had the state created danger doctrine longer than the Fifth Circuit confirms the conclusion that the theory should only allow recovery when the state actor knows or should have known that its actions endangered specific individuals as opposed to the public at large. *See, e.g., Kallstrom v. City of Columbus*, 136 F.3d 1055, 1066 (6th Cir. 1998); *Armijo v. Wagon Mound Public Schools*, 159 F.3d 1253, 1263 (10th Cir. 1998); and *Mitchell v. Duval County School Bd.*, 107 F.3d 837, 839 (11th Cir. 1997).

A comparison between *Kallstrom* and the Gastons' case is particularly enlightening because Kallstrom exemplifies the situation where specific plaintiffs experience an increase of danger as a result of a state actor's conduct. In *Kallstrom*, three undercover police officers for the Columbus Police Department brought a § 1983 suit against the City of Columbus, OH, for damages and injunctive relief. 136 F.3d at 1059. These three officers were involved in a drug investigation that led to the arrest and conviction of forty-one members of a violent Columbus gang. These officers also testified at the criminal trial.

During the trial, the City of Columbus released the personnel files of these officers to members of the public who asked for them, including the defense counsel. These personnel files contained: the officers' names, addresses, and telephone numbers; the names, addresses, and telephone numbers of close relatives; the officers' social security numbers; copies of the officers' drivers licenses; the officers' banking records; and other personal information. The officers filed suit for damages suffered from the release of this information and for an injunction to prevent further dissemination. *Id.* at 1059–60.

While the district court ruled in favor of the City, the Sixth Circuit reversed finding liability under the state created danger doctrine. *Id.* at 1069–70. In so doing, the court limited its holding as to when a plaintiff could recover under the state created danger doctrine. *Id.* at 1066. Recognizing that many state activities have the potential to increase an individual's risk of harm, the Sixth Circuit required a showing of "special danger" to recover under the theory. *Id.* The court went on to state: "[t]he victim faces 'special danger' where the state's actions place the victim specifically at risk, as distinguished from a risk that affects the public at large." *Id.*

In *Kallstrom,* the state actors knew or should have known that by releasing the officers' personnel files to the public at large and especially into the hands of violent gang members, they "substantially increased the officers' and their families' vulnerability to private acts of vengeance." *Id.* at 1067. The City's actions increased the risk faced by a defined group as distinguished from the general public. Whereas, in the Gastons' case, there are no allegations that Horn and/or Reed knew or should have known that any action they took substantially increased the risk of harm to the Gastons' sons as distinguished from the public at large.

Because the Gastons have not alleged that Horn and/or Reed knew or should have known that their actions increased the danger faced by either Anthony Gaston, Jr. or Justin Gaston as distinguished from the public at large, this case does not fit within the state created danger doctrine. As stated above, Anthony Gaston, Jr. was a tragic, but random victim of a crime that occurred six weeks and more than one hundred miles away from any action taken by Horn and/or Reed. As such, the Gastons' have failed to allege a violation of a clearly established constitutional right and the court need not consider the reasonableness of Horn and Reed's actions, the second prong of the qualified immunity analysis. *Salas v. Carpenter,* 980 F.2d 299, 305–06 (5th Cir.1992). Thus, Horn and Reed have qualified immunity from the Gastons' § 1983 claims and Horn and Reed's Motion for Judgment on the Pleadings should be granted with regard to the § 1983 claims. Accordingly, the court Dismisses without Prejudice the Gastons' § 1983 claims.

### III. The Gastons' State Law Claims Against Horn and Reed

■ Reed and Horn's motion also asked the court to dismiss the Gastons' state law claims. Generally, when a district court dismisses all federal claims from a case prior to trial, the court declines to exercise jurisdiction over the pendent state law claims. *McClelland v. Gronwaldt,* 155 F.3d 507, 519 (5th Cir.1998). Furthermore, 28 U.S.C. § 1367(c) provides that "[t]he district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if—

(1) the claim raises a novel or complex issue of State law,

(2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,

(3) the district court has dismissed all claims over which it has original jurisdiction, or

(4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction."

28 U.S.C. § 1367(c) (1994). While supplemental jurisdiction is discretionary, the Supreme Court has counseled that when a single federal claim is dismissed early in a case, the district court has "a powerful reason to choose not to continue to exercise jurisdiction." *Carnegie–Mellon Univ. v. Cohill,* 484 U.S. 343, 351, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988). The court chooses not to exercise jurisdiction over the Gastons' state claims against Horn and Reed and severs and remands those claims back to Texas state court.

## IV. The Gastons' Federal Claims Against the City of Crockett

■ The Gastons have also brought a § 1983 claim against the City of Crockett, but like the federal claims brought against Horn and Reed, these too must be dismissed as the plaintiffs have failed to state a claim that the City of Crockett violated their constitutional rights. To state a § 1983 claim against a municipality, a plaintiff must plead facts that show: 1) a policy or custom existed; 2) the government policy makers actually or constructively knew of its existence; 3) a constitutional violation occurred; and 4) the custom or policy served as the moving force behind the violation. *Meadowbriar Home for Children, Inc. v. Gunn,* 81 F.3d 521, 533 (5th Cir.1996). Here, the Gastons have claimed that the City of Crockett violated their rights protected by the Fifth and Fourteenth Amendments, but have failed to allege facts sufficient to establish such violations have occurred.

■ First, the City of Crockett did not violate any rights protected by the Fifth Amendment because this amendment protects citizens from actions taken by the federal government and the City of Crockett is not a federal entity. *Knoetze v. Untied States, Dept. of State,* 634 F.2d 207, 211 (5th Cir.1981). Furthermore, the City of Crockett has not violated any substantive due process rights of the plaintiffs because, as stated above, this case does not fall within the state created danger doctrine (the Gastons have not alleged that the City of Crockett knew or should have known that the Gastons' sons as distinguished from the public at large faced any special dangers from their actions) and the Gastons have not alleged a special relationship existed between Anthony Gaston, Jr. and/or Justin Gaston and the City of Crockett. As such, the general rule of *DeShaney* applies and the Gastons have failed to state a claim for a violation of their substantive due process rights. Finally, the Gastons have failed to allege the City of Crockett treated them differently than others similarly situated, and therefore no equal protection violation has been pled. *Muhammad v. Lynaugh,* 966 F.2d 901, 903 (5th Cir.1992). Accordingly the City of Crockett's Motion for Judgment on the Pleadings is Granted with regard to the Gastons' § 1983 claims.

## V. The Gastons' State Law Claims Against the City of Crockett

Having dismissed all the federal claims against the City of Crockett, this court declines to exercise jurisdiction over the Gastons' state law claims and severs and remands these claims back to state court.

## VI. Conclusion

It is, therefore,

ORDERED, that Defendant Horn and Reed's Motion for Judgment on the Pleading is hereby GRANTED with regard to the Plaintiffs' federal claims. It is further,

ORDERED, that Defendant City of Crockett's Motion for Judgment on the

Pleadings is hereby GRANTED with regard to the Plaintiffs' federal claims. It is further,

ORDERED, that the Plaintiffs' claims brought under 42 U.S.C. § 1983 against Defendants Horn, Reed, and the City of Crockett are hereby Dismissed without Prejudice and the state law claims brought against Defendants Horn, Reed, and the City of Crockett are severed and remanded back to Texas state court.