**UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

_____

**No. 93-7196**
_____


**LARRY WAYNE FOSTER, ET AL.,**

**Plaintiffs-Appellees,**

**VERSUS**

**CITY OF LAKE JACKSON, ET AL.,**

**Defendants,**

**A.A. MCCLAIN, ETC., WILLIAM YENNE, ETC.,**
**P.C. MILLER, ETC., MATTHEW HOUSTON, ETC.,**
**and JOHN DEWEY, ETC.,**

**Defendants/Appellants.**
_____

**Appeals from the United States District Court**
**for the Southern District of Texas**
_____

(July 27, 1994)

BEFORE WISDOM and BARKSDALE, Circuit Judges, and HARMON, District
Judge.[1]

RHESA HAWKINS BARKSDALE, Circuit Judge:

The dispositive issue for this appeal is qualified immunity
against a claim of denial of access to the courts by concealing and
suppressing evidence during discovery.  And, for purposes of this
appeal, that issue centers on whether the claimed constitutional
right was clearly established at the time of its alleged violation.
Claiming qualified immunity, among other things, officials of the

---

[1]     District Judge of the Southern District of Texas, sitting by
designation.

City of Lake Jackson, Texas, press this interlocutory appeal from the denial of their motion to dismiss.  We **REVERSE**.

                                I.

Larry and Pamela Foster sued the City in state court in 1985, claiming that their son's death in an automobile accident was caused by the City's failure to maintain a traffic light.  After discovery, the Fosters and the City reached a settlement, and the claims against the City were dismissed.[2]

The Fosters later filed this § 1983 action against the City and several of its officials.[3]  They alleged that, in the state suit, the defendants conspired to deny them access to the courts by concealing and suppressing evidence during discovery, causing them to settle for less than they might have had they obtained the evidence in question.[4]

_____

[2]     In June 1988, the Fosters signed a release acquitting the City and city officials of liability for the accident; the court granted their motion to dismiss in December 1990.  It is unclear when the state suit discovery took place.  The city officials assert that the Fosters settled that suit in 1986; and the district court used that year as its benchmark for determining whether the right at issue was clearly established.  For our purposes, however, we must consider whether it was clearly established in the period 1985 to 1988.  We do so because this appeal is from the denial of a motion to dismiss, see Fed. R. Civ. P. 12(b)(6).  Accordingly, we must take as true the well pleaded allegations in the complaint.  *See infra*.  With regard to the timing of the challenged conduct, the complaint alleges only that it occurred from 1985-1988.

[3]     The city officials, and their positions at the time of the challenged conduct, are:  A.A. MacLean (City Manager), William Yenne (Assistant City Manager), P.C. Miller (Chief of Police), Matthew Houston (City Engineer), and John Dewey (City Attorney).

[4]     The Fosters alleged that the city officials intentionally failed to respond to interrogatories concerning prior complaints about the traffic light; removed or destroyed the police

                                2

The city officials moved, *inter alia*, to dismiss, pursuant to Fed. R. Civ. P. 12(b)(6). They asserted that the Fosters failed to state a violation of a constitutional right, and that, in any event, the action was barred by absolute witness immunity and qualified immunity. The district court held that a claim had been stated, and ruled, *inter alia*, against the absolute witness immunity defense, **Foster v. City of Lake Jackson**, 813 F. Supp. 1262, 1263 (S.D. Tex. 1993); later, against qualified immunity.[5] The separate appeals from those orders have been consolidated.[6]

_____

dispatcher's log records in which the complaints were recorded; withheld the logs despite a document request; gave false deposition testimony regarding their knowledge of the malfunction; and induced police officers to remain silent about their knowledge of it.

[5] In denying qualified immunity, the district court cited the Supreme Court's recent decision in **Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit**, ___ U.S. ___, 113 S. Ct. 1160, 1162 (1993), which held the heightened pleading standard for civil rights actions inapplicable for those against municipalities. *See* **Elliott v. Perez**, 751 F.2d 1472 (5th Cir. 1985) (establishing heightened pleading standard; abrogated as to municipalities by **Leatherman**). The district court noted that **Leatherman** had not addressed whether **Elliott** continued to apply to claims against individuals. Accordingly, it felt bound to apply the **Elliott** standard to the allegations against the city officials; however, it ordered limited discovery. Because we hold that the officials are entitled to qualified immunity, the heightened pleading issue is moot.

[6] In the first appeal, the city officials also challenged the district court's order that they submit to discovery before adjudication of qualified immunity. This issue is moot, because, after the appeal from the discovery order was filed, the district court denied the defense.

The city officials contend that the district court was without jurisdiction to deny qualified immunity, asserting that the earlier appeal from both the denial of witness immunity and the discovery order divested it of jurisdiction. This contention overlooks the fact that the discovery order, in essence, denied qualified immunity. *See, e.g.*, **Jacques v. Procunier**, 801 F.2d

3

II.

Our qualified immunity holding moots the other issues. When the issue is purely one of law, denial of such immunity is appealable immediately under 28 U.S.C. § 1291, notwithstanding the absence of a final judgment, because "immunity" in this sense "means immunity from suit, not simply immunity from liability." *Jackson v. City of Beaumont Police Dep't*, 958 F.2d 616, 618 & n.3 (5th Cir. 1992) (citing *Mitchell v. Forsyth*, 472 U.S. 511 (1985); *Geter v. Fortenberry*, 849 F.2d 1550, 1552 (5th Cir. 1988)); *see also* *Siegert v. Gilley*, ___ U.S. ___, 111 S. Ct. 1789, 1793 (1991). But, where there are fact issues, the denial is not appealable immediately. *E.g.*, *Lampkin v. City of Nacogdoches*, 7 F.3d 430, 436 (5th Cir. 1993), *cert. denied*, ___ U.S. ___, 114 S. Ct. 1400 (1994). Here, no facts are disputed; because we review the denial of a Rule 12(b)(6) motion, we take as true the well pleaded allegations in the complaint. *E.g.*, *Jackson v. City of Beaumont*, 958 F.2d at 618; *Collins v. City of Harker Heights*, 916 F.2d 284, 286 & n.2 (5th Cir. 1990), *aff'd*, ___ U.S. ___, 112 S. Ct. 1061 (1992). We review the denial *de novo*. *Jackson v. City of Beaumont*, 958 F.2d at 618.

At bottom, qualified immunity "reconcile[s] two competing interests. One interest is the compensation of persons whose federally protected rights have been violated. Opposing this is the fear that personal liability will inhibit public officials in

---

789, 791 (5th Cir. 1980) (purposes of qualified immunity include shielding officials from "burdens of broad-reaching discovery").

4

the discharge of their duties." *Johnston v. City of Houston*, 14 F.3d 1056, 1059 (1994); *accord*, *Spann v. Rainey*, 987 F.2d 1110, 1114 (5th Cir. 1993).  In balancing these interests, it is inevitable that some improper actions are shielded.

Abrogation of qualified immunity is properly the exception, not the rule.  *See* *McGregor v. Louisiana State Univ. Bd. of Supervisors*, 3 F.3d 850, 862 (5th Cir. 1993), *cert. denied*, ___ U.S. ___, 114 S. Ct. 1103 (1994).  The burden of negating the defense lies with the plaintiffs.  *Chrissy F. by Medley v. Mississippi Dep't of Public Welfare*, 925 F.2d 844, 851 (5th Cir. 1991) (quoting *Mitchell*, 472 U.S. at 526); *appeal after remand*, 995 F.2d 595 (5th Cir. 1993), *cert. denied*, ___ U.S. ___, 114 S. Ct. 1336 (1994); *see also* *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

> In assessing a claim of qualified immunity, we engage in a bifurcated analysis.  First, we determine whether the plaintiff has allege[d] the violation of a clearly established constitutional right.  If so, we then decide if the defendant's conduct was objectively reasonable....

*Rankin v. Klevenhagen*, 5 F.3d 103, 105 (5th Cir. 1993) (citations and internal quotation marks omitted; brackets in original).  Accordingly, "`[u]nless the plaintiff's allegations state a claim of violation of clearly established law, a defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery.'" *Chrissy F.*, 925 F.2d at 848 (quoting *Mitchell*, 472 U.S. at 526) (citations omitted).

Therefore, our first task is to "review the specific parts of the complaint to determine whether [plaintiffs] charge conduct

5

violating clearly established federal rights".  *Id.* at 851 & n.33
(citing *Stem v. Ahearn*, 908 F.2d 1, 5-6 (5th Cir. 1990), *cert.
denied*, 498 U.S. 1069 (1991)); *accord*, *Lampkin*, 7 F.3d at 434;
*Enlow v. Tishomingo County*, 962 F.2d 501, 508 (5th Cir. 1992).  A
right is "clearly established" only when its contours are
sufficiently clear that a reasonable official would have realized
that his conduct violated that right, not simply that the conduct
was otherwise improper.  *See, e.g.*, *Doe v. Taylor Indep. Sch.
Dist.*, 15 F.3d 443, 454-55 (5th Cir. 1994) (*en banc*) (citing
*Anderson v. Creighton*, 483 U.S. 635, 639 (1987)); *Boddie v. City of
Columbus*, 989 F.2d 745, 748 (5th Cir. 1993); *Click v. Copeland*, 970
F.2d 106, 109 (5th Cir. 1992).

An official's conduct is not protected by qualified immunity
if, in light of preexisting law, it was apparent that the conduct,
when undertaken, constituted a violation of the right at issue.
This is true even if the "very action in question" had not then
been held to be a constitutional violation.  *See* *Anderson*, 483 U.S.
at 640; *Spann v. Rainey*, 987 F.2d at 1114-15 (reasonableness of
official conduct judged in light of law existing at time of
violation).  "Put another way, officials must observe `general,
well-developed legal principles.'" *Doe v. Taylor ISD*, 15 F.3d at
455 (quoting *Jefferson v. Ysleta Indep. Sch. Dist.*, 817 F.2d 303,
305 (5th Cir. 1987)).

The constitutional right in issue is access to the courts.
The Fosters contend that this right protects against the discovery
abuses claimed here, because otherwise, litigants' access to the

6

courts is not "adequate, effective and meaningful". The city officials counter that the right does not encompass a right to proceed free of discovery abuses by a governmental entity involved in a civil lawsuit in state court, but protects only the right to institute the action. In addition, they assert that, even if a more broadly-based right exists now, it was not clearly established in 1985-88, the time of the alleged conduct. *See* note 2, *supra*. We agree with this latter contention.

The right of access, in its "most obvious and formal manifestation ... protects one's physical access" to the courts. ***Crowder v. Sinyard***, 884 F.2d 804, 811 (5th Cir. 1989), *cert. denied*, 496 U.S. 924 (1990). In this manifestation, our court has found the right to be implicated where, for example, prisoners are denied the right to file a lawsuit, or are denied access to legal materials, or when prison officials fail to forward legal documents. ***Id.*** at 811-12; ***Brewer v. Wilkinson***, 3 F.3d 816, 820 (5th Cir. 1993) (collecting cases), *cert. denied*, ___ U.S. ___, 114 S. Ct. 1081 (1994). Similarly, the right may be violated if an indigent litigant is denied a refund or waiver of filing fees. *See* ***Johnson v. Atkins***, 999 F.2d 99 (5th Cir. 1993).

Here, however, the claimed violation is not an impediment to the ability to file suit. Instead, as framed by the district court, plaintiffs allege that

> public officials "wrongfully and intentionally conceal[ed] information crucial to a person's ability to obtain redress though the courts, and d[id] so for the purpose of frustrating that right, and that concealment and the delay engendered by it substantially reduce[d] the likelihood of one's

7

          obtaining the relief to which one [wa]s otherwise
          entitled...."

*Foster*, 813 F. Supp. at 1263 (quoting *Crowder*, 884 F.2d at 812)

(district court's brackets).  As noted, plaintiffs contend that

defendants' actions have violated their right of "`adequate,

effective, and meaningful'" access.  *Crowder*, 884 F.2d at 811,

*quoting* *Ryland v. Shapiro*, 708 F.2d 967, 972 (5th Cir. 1983).

     *Crowder* -- which involved a challenge to defendants' taking

plaintiffs' property outside the jurisdiction in an *in rem* action

-- did not involve a "cover-up" by officials.  Instead, like the

prisoners' rights cases on which it relied, it involved conduct by

an official that effectively could have prevented plaintiffs from

instituting their action.  That is, the Crowders alleged that by

removing their property from Texas, the defendants "destroyed or

impaired the rightful jurisdiction of Texas courts over the seized

items, thus interfering with [the Crowders'] ability to litigate

ownership of the property in Texas".  *Crowder*, 884 F.2d at 813

(internal citations and quotation marks omitted) (brackets in

original).

     Similarly, *Ryland v. Shapiro*, 708 F.2d 967 (5th Cir. 1983)

(cited in *Crowder*, 884 F.2d at 812), which involved a cover-up by

state prosecutors, is distinguishable.  *Ryland*, like *Crowder*,

concerned an officially-created impediment to the ability to file

an action, rather than, as here, an alleged post-filing violation.

*See* *Ryland*, 708 F.2d at 973.

     As stated in *Crowder*, the right of access is "a facilitative

right ... designed to ensure that a citizen has the opportunity to

8

exercise his or her legal rights to present a cognizable claim to the appropriate court and, if that claim is meritorious, to have the court make a determination to that effect and order the appropriate relief."  884 F.2d at 814.  Thus, our court has characterized the right of access (even "adequate, effective, and meaningful access" as contemplated by *Crowder*, 884 F.2d at 811, rather than only a physical right of access) to be implicated where the ability to file suit was delayed, or blocked altogether.  For example, in *Ryland*, our court found that the prosecutors' action to delay filing suit could interfere with the "constitutionally protected right to institute ... suit", if that right had been prejudiced.  708 F.2d at 973.[7]

*Crowder* acknowledged that, even in 1989, the contours of the right of judicial access could best be described as "nebulous". 884 F.2d at 811.  As reflected above, we hold that the right of access, as clearly established in 1985-1988, encompassed a right to

---

[7]     The Fosters rely on the language from *Ryland* and *Crowder*, quoted *supra*, and on cases from other jurisdictions, to urge that a government cover-up of evidence violates the right of access, even if suit has been successfully instituted. *See, e.g.,* ***Bell v. City of Milwaukee***, 746 F.2d 1205, 1260-61 (7th Cir. 1984) (citing *Ryland*); *see also* ***Nielsen v. Basit***, No. 83 C 1683, 1994 WL 30980, at *3-4 (N.D. Ill. Feb. 1, 1994) (not reported in F. Supp.) (citing *Bell* for proposition that allegations of civil conspiracy to cover up evidence could state a claim for denial of access to courts, and that that right was clearly established in 1981).

*Bell*, 746 F.2d at 1260-61, cites our court's 1983 *Ryland* opinion with approval.  We question *Bell*'s reliance on *Ryland* for any broader definition of right of access than one encompassing the right to institute suit.  We are similarly skeptical of *Nielsen*'s reliance on *Bell*.  *Nielsen*, 1994 WL 30980, at *3 (citing *Bell*, 745 F.2d at 1261).

9

file an action, but not the right to proceed free of discovery abuses after filing.[8] *Cf.* **Emplanar, Inc. v. Marsh**, 11 F.3d 1284, 1296 (5th Cir. 1994) (in ongoing suit against government agency, government employee who was potential witness did not improperly chill access to courts by refusing to speak to plaintiff about gravamen of litigation).

As discussed, we must accept as true the Fosters' allegations; the alleged conduct would be reprehensible. But, that we are "morally outraged", or the "fact that our collective conscience is shocked" by the alleged conduct, **Doe v. Taylor ISD**, 15 F.3d at 475 (Jones, J., dissenting), does not mean necessarily that the officials should have realized that it violated a constitutional right of access. The reasonable actor must have known that the conduct violated a clearly-established right; not that, in some sense, he was doing something wrong. *See **id.*** at 465 (Garwood, J., dissenting) (dissent would hold that defendant was nevertheless entitled to qualified immunity despite the fact that his actions

---

[8] In cases decided after 1988, our court has continued to characterize the right of access in terms of the right to institute suit. *See, e.g.*, **Chrissy F.**, 925 F.2d at 851 (holding that plaintiff's right of access to the courts was "blocked" by defendants' failure to report allegations of abuse to appropriate authorities, which failure caused plaintiffs to delay filing suit); **Johnson v. Atkins**, 999 F.2d at 100. **Hale v. Townley**, 19 F.3d 1068, 1072-74 (5th Cir. 1994), *modified*, Nos. 92-5208, 93-4090, 1994 WL 185925, slip op. 4462 (5th Cir. May 13, 1994), concerns claims in 1988-1991 of retaliation for having sought redress in the courts. **Hale** notes, in dicta, that **Crowder**, 884 F.2d 804, similarly did not involve a "claim that the defendants had attempted to cover up facts critical to the plaintiffs' lawsuits." **Hale**, 19 F.3d at 1073.

were "deplorable....indecisive, insensitive, inattentive, incompetent, stupid, and weak-kneed").

In sum, even assuming that the contours of the right of access have been expanded since 1988 to include the Fosters' definition, those contours were not clearly established at the time the claimed violations occurred. A public official who concealed or destroyed evidence, or gave false deposition testimony, surely would have known that was improper, to say the least; but, at the time of the alleged conduct, the right was not sufficiently "particularized ... [so] that a reasonable official would understand" that the behavior violated a constitutional right.[9] *See Doe v. Louisiana*, 2 F.3d 1412, 1416 (5th Cir. 1993) (citations and internal quotation marks omitted), *cert. denied*, ___ U.S. ___, 114 S. Ct. 1189 (1994).

III.

For the foregoing reasons, we **REVERSE** the denial of qualified immunity for the city officials, and **REMAND** for further proceedings consistent with this opinion.

**REVERSED** and **REMAND**

---

[9] The Fosters could, of course, have sought relief in state court for the challenged behavior using a variety of state law remedies, *e.g.* a motion to set aside the judgment based on fraud or motions to compel compliance with discovery requests. *See, e.g.*, **Tice v. City of Pasadena**, 767 S.W.2d 700, 702 (Tex. 1989) (motion to set aside judgment); Tex R. Civ. P. 215 (discovery); Tex. R. Civ. P. 320 (motion for new trial upon showing of newly-discovered evidence).