Ronald HINDS, Plaintiff,

v.

DALLAS INDEPENDENT SCHOOL DISTRICT, et al., Defendants.

No. CIV.A.3:97–CV–2258–L.

United States District Court,
N.D. Texas,
Dallas Division.

Feb. 22, 2002.

Jeanne Crandall, Reyna Hinds & Crandall, Dallas, TX, for plaintiff.

James E Coleman, Jr, Carrington Coleman Sloman & Blumenthal, Dallas, TX, for Dallas Independent School Dist., Kathleen Leos, Jose Plata, Yvonne Ewell, Sandy Kress, William Keever, Dan peavy, Kathlyn Gilliam, Chad Woolery, Lynda McDow, defendants.

Dan Peavy, McKinney, TX, pro se.

Alan B. Rich, Baron & Budd, Dallas, TX, Lawrence J. Friedman, James R. Krause, Friedman & Feiger, Dallas, TX, for Lawrence Friedman, Friedman & Asso., PC, Alan B. Rich, defendants.

Gary D. Elliston, DeHay & Elliston, Dallas, TX, Dennis J. Eichelbaum, Schwartz & Eichelbaum, Plano, TX, Leonard J. Schwartz, Schwartz & Eichelbaum, Austin, TX, for Schwartz & Eichelbaum, PC, defendant.

Melinda R Burke, Shannon Gracey Ratliff & Miller, Fort Worth, TX, Leonard J Schwartz, Schwartz & Eichelbaum, Plano, TX, for Dennis J. Eichelbaum, defendant.

Dennis J. Eichelbaum, Plano, TX, pro se.

## AMENDED MEMORANDUM OPINION AND ORDER

LINDSAY, District Judge.

On February 21, 2002, the court issued a memorandum opinion and order in this case. Pursuant to Fed.R.Civ.P. 60(a), the court issues this Amended Memorandum Opinion and Order to correct several errors in citation contained on page 11 of the original opinion. The amended opinion

corrects these errors in citation so that the opinion now reads as the court originally intended.

None of these edits changes the substance of the opinion issued on February 21, 2002; the edits are made solely to reflect the correct citations. Accordingly, the Memorandum Opinion and Order issued on February 21, 2002 is hereby **vacated** and the following Amended Memorandum Opinion and Order is **substituted** in its place.

Before the court are the following:

1. Motion for Summary Judgment of the DISD and the DISD Defendants, filed April 12, 2001;

2. Brief in Support of Motion for Summary Judgment of the DISD and the DISD Defendants, filed April 12, 2001;

3. Motion for Summary Judgment of Defendants Rich, Friedman, and Friedman & Associates, P.C., filed April 16, 2001;

4. Brief in Support of Motion for Summary Judgment of Defendants Rich, Friedman, and Friedman & Associates, P.C., filed April 16, 2001;

5. Defendants Schwartz and Eichelbaum, P.C.'s and Dennis Eichelbaum's Second Motion for Summary Judgment, filed April 16, 2001;

6. Brief in Support of Defendants Schwartz and Eichelbaum, P.C.'s and Dennis Eichelbaum's Second Motion for Summary Judgment, filed April 16, 2001;

7. Plaintiff's Response to the DISD and DISD Defendants' Motion for Summary Judgment and Supporting Brief, filed June 8, 2001;

8. Plaintiff's Response to Defendants Rich, Friedman, and Friedman & Associates, P.C.'s Motion for Summary Judgment and Supporting Brief, filed June 18, 2001;

9. Plaintiff's Response to Defendants Eichelbaum and Schwartz & Eichelbaum, P.C.'s Second Motion for Summary Judgment and Supporting Brief, filed June 8, 2001;

10. DISD et al.'s Reply to Hinds's Response for Summary Judgment, filed June 22, 2001; and

11. Defendants Schwartz and Eichelbaum, P.C.'s and Dennis Eichelbaum's Reply to Plaintiff's Response to the Eichelbaum Defendants' Second Motion for Summary Judgment and Supporting Brief, filed June 25, 2001.[1]

After careful consideration of the motions, responses, replies, summary judgment evidence, and applicable authority, the court **grants** the summary judgment motions of all Defendants.

## I. *Procedural and Factual Background*

Ronald Hinds ("Hinds" or "Plaintiff") filed this action on September 12, 1997, against the Dallas Independent School District ("DISD"), Kathleen Leos ("Leos"), Hollis Brashear ("Brashear"), Jose Plata ("Plata"), Yvonne Ewell ("Ewell"), Sandy Kress ("Kress"), William Keever ("Keever"), Dan Peavy ("Peavy"), Kathlyn Gilliam ("Gilliam"), Chad Woolery ("Woolery"), Lynda McDow ("McDow"), collectively referred to as the "DISD Defendants"; Larry Friedman ("Friedman"), Friedman & Associates, P.C., Alan Rich ("Rich"), and David Reese ("Reese"), collectively referred to as the "Friedman Defendants"; and Schwartz & Eichelbaum, P.C., and Dennis Eichelbaum ("Eichelbaum"), collectively referred to as the "Eichelbaum Defendants." All groups of Defendants are collectively referred to as

---

1. The court also has before it the appendices of all three groups of Defendants in support of their respective summary judgment motions.

"Defendants." Defendants Leos, Brashear, Plata, Ewell, Kress, Keever, Peavy, Gilliam, and McDow, during the relevant period for this action, were trustees of DISD.[2] Woolery was the superintendent of DISD for the relevant time period. Friedman and his law firm, Rich, Reese, and Eichelbaum and his law firm provided legal representation to DISD, its trustees, and Woolery during the relevant time period.

Hinds brings this action pursuant to 42 U.S.C. § 1983 and Tex. Const. art. I.[3] *See* Plaintiff's First Amended Complaint ¶ 1, filed February 28, 2001, hereafter referred to as "Plaintiff's Complaint." The basis for this action is a lawsuit filed by DISD officials against Hinds and several other individuals in September 1995. The gravamen of Hinds's action is as follows:

12. On September 13, [1995], in an effort to harass, intimidate, and discredit Hinds, prevent his exercise of free speech, deprive his client of representation, deprive Hinds of the ability to effectively represent his client, denial of access to the courts, retaliate against his participation in criticism and litigation against certain of the Defendants, prevent his future participation in criticism and litigation against Defendants, DISD filed a RICO, mail fraud, wire fraud and conspiracy lawsuit naming Hinds, Venable, Finlan, and Grant as Defendants. DISD did so knowing that its claims

were baseless and without any form of factual foundation. Thereafter, the individual defendant trustees ratified the action taken by their attorneys, instructing their attorneys to proceed with litigation even though it was baseless and without any form of factual foundation.

13. Defendants took such actions even though Texas law does not permit a lawsuit making such claims to be filed against the attorney (Hinds) for an opposing party.

14. In a further effort to deprive Hinds of his protected statutory and constitutional civil rights, Friedman issued a press release and made television appearances wherein he maximized the public exposure of Defendants' false and malicious and unlawful allegations and lawsuit in an effort to further discredit and destroy the reputation of Hinds in retaliation for Hinds' exercise of his protected statutory and constitutional rights and in an effort to deny Hinds the future enjoyment of his protected statutory and constitutional civil rights.

15. The pattern of conduct of Defendants throughout these proceedings demonstrates that the violation of Hinds' protected statutory and constitutional civil rights was a part of their very deliberately conceived strategy to drive Finlan and the Venables and their counsel from the courthouse and eliminate public criticism and other forms of speech and access to the courts.

---

**2.** Defendant Ewell is deceased. Reese is mentioned in the body of Plaintiff's First Amended Complaint, but is not listed in the caption as a defendant. The docket also reflects that Plaintiff Hinds has not effected service on Reese and that Reese has not filed an answer. Accordingly, the court lacks personal jurisdiction over Reese at this time.

**3.** To put this matter in perspective, Hinds initially represented Richard Finlan ("Finlan"), and Don and David Venable (collectively the "Venables") in a $300,000,000 lawsuit

DISD filed in 1992 against these three individuals. Later, Finlan represented himself *pro se,* and Hinds continued to represent the Venables. Hinds also represented Ed Grant on a cross-claim he filed against the law firm for indemnity and legal malpractice. A more detailed recitation of the underlying and background facts is found in *Dallas Indep. Sch. Dist. v. Finlan,* 27 S.W.3d 220, 230 (Tex. App.—Dallas 2000, pet. denied), *cert. denied,* —— U.S. ——, 122 S.Ct. 342, 151 L.Ed.2d 258 (2001), of which the court takes judicial notice pursuant to Fed.R.Evid. 201.

16. Subsequently, on the eve of hearing of Hinds' Motion for Summary Judgment as to these claims, DISD filed its Third Amended Petition which deleted the RICO, mail fraud and wire fraud claims so that they would not be heard by the trial court. The remaining civil conspiracy claim was heard by the trial court which granted summary judgment to Hinds. DISD then appealed Hinds' summary judgment and the appellate court agreed with Hinds and affirmed the trial court ruling.

. . . . .

19. By their actions, as above described, Defendants have conspired to violate, and have violated, Hinds [sic] protected statutory and constitutional civil rights and, by this complaint, he seeks, pursuant to 42 U.S.C. § 1983, recovery of his actual damages, punitive damages, attorneys fees, such pre-judgment and post-judgment interest as is allowed by law, and costs of court in pursuing this matter.

20. [A]t all times relevant hereto, Hinds had well known and well established rights to engage in the unfettered legal representation (constrained only by the rules, statutes and ethics governing his profession and his clients' legal positions), as a duly licensed attorney, of unpopular clients (who are critics of government and government officials), to engage in political speech, to engage in speech on behalf of his clients, to associate, both professionally and personally, with those government critics and other [sic] who are unpopular with Defendants, and to be free of retaliation by government and government officials who are offended by the lawful actions and criticism directed at them by these associates. By their conduct, as described above, Defendants, acting under color of official office, knowingly breached and violated, and conspired to breach and violate, Hinds' freedom of speech (both his own personal expression and that made on behalf of his clients), Hinds' freedom of association, and Hinds' freedom from governmental retaliation. Further breached and violated is the fundamental right of a licensed attorney to represent unpopular clients (who are critics of government and government officials) free of retaliation by government and government officials who are offended by the clients' own constitutionally protected actions and criticism. By filing their illegal action against Hinds, Defendants sought to punish and oppress and damage Hinds for the exercise of his rights and, in fact, they achieved this unlawful purpose. They sought to chill and destroy Hinds' exercise of his protected rights and did, in fact, achieve this unlawful purpose. Defendants' actions were without legal right or justification.

Plaintiff's Complaint ¶¶ 12–16, 19, 20.[4]

Finally, with respect to his state cause of action, Hinds asserts a claim for mali-

4. On the same day that the RICO action was filed, September 13, 1995, Friedman issued a press release to the media. Hinds, Venable, Finlan and Grant sued Friedman and Associates, contending that they had been defamed by the statements made in the press release. Friedman and Associates moved for summary judgment, and the trial court granted their motion for summary judgment. The court of appeals affirmed the trial court's grant of summary judgment. *See Dallas Indep. Sch.* *Dist. v. Finlan,* 27 S.W.3d 220, 237–38, 240 (Tex.App.—Dallas 2000, pet. denied), *cert. denied,* —— U.S. ——, 122 S.Ct. 342, 151 L.Ed.2d 258 (2001). In this same case, Finlan contended that the DISD Defendants and DISD attorneys retaliated against him and violated his civil rights by filing a lawsuit against him for protesting and petitioning against DISD and its officials because of certain practices and policies of DISD that he opposed and his request for which he believed

cious prosecution. He contends that (1) the underlying lawsuit filed in September 1995 was instituted by Defendants; (2) no probable cause existed to file the lawsuit; (3) the lawsuit was maliciously instituted; (4) the lawsuit terminated in his favor; and (5) he suffered special damages as a "legal practitioner who must rely on his reputation and the confidence of his clients in order to effectively pursue his livelihood." Plaintiff's Complaint ¶ 22. Defendants filed motions for summary judgment asserting essentially that Plaintiff's claims fail on the merits, or that they are entitled to various immunities.[5]

## A. The DISD Defendants' Summary Judgment Motion

The DISD Defendants contend that the claims brought against them should be dismissed on grounds of qualified immunity. Further, they contend that Hinds's claims should be dismissed on the merits as to the DISD Defendants because the filing of the lawsuit against Hinds, Venable, Grant, and Finlin did not deprive Hinds of any legally protected right and creates no genuine issue of material fact regarding the DISD Defendants with respect to Plaintiff's claims, and they are therefore entitled to judgment as a matter of law.

## B. The Eichelbaum and Friedman Defendants' Summary Judgment Motions

■ The Eichelbaum and Friedman Defendants contend they are entitled to summary judgment because Plaintiff's claims under 42 U.S.C. § 1983 and state law fail as a matter of law. Specifically, these Defendants contend they committed no act or engaged in any conduct which would subject them to liability to Hinds. They contend that Hinds's access to the courts was not delayed or blocked altogether, and any such claim fails as a matter of law. In addition, the filing of a lawsuit against Hinds, even if malicious and retaliatory (which these Defendants deny), does not state a constitutional violation.[6]

These Defendants contend that Plaintiff's state law claim of malicious prosecution fails because Hinds has suffered no

---

were public documents and information. The lawsuit, according to Finlan, was retaliatory and an attempt by DISD and its attorneys to "drive him from the courthouse," that is, stop him from filing lawsuits against DISD, its officials, and attorneys. *Id.* at 241.

5. Ewell did not move for summary judgment because she is deceased. Reese has never been served, no answer has been filed on his behalf, and therefore he is not a proper party to this litigation; no motion has been filed on his behalf. The court allowed counsel for DISD and the DISD Defendants to withdraw from representation of Defendant Peavy on May 20, 1999. Peavy has not obtained new counsel, is *pro se,* and has not filed a motion for summary judgment.

6. The Eichelbaum Defendants also contend that they are entitled to summary judgment as a matter of law because the Friedman Defendants represented DISD in the RICO litigation, and, since they did not personally partic-

ipate in the alleged violation (the filing of the lawsuit), they can incur no liability under § 1983. The court does not address this ground for summary judgment because it reflects a misunderstanding of the degree of causation required to establish liability under § 1983, and because the court disposes of the summary judgment motions on other grounds. As the Fifth Circuit has explained:

> The language of § 1983 requires a degree of causation as an element of individual liability, but it does not specifically require personal participation. The proper question is therefore whether the complaint adequately alleges the requisite causal connection between the supervisory defendants' actions and a deprivation of plaintiff's constitutional rights. Personal participation is only one of several theories which can be used to establish causation.

*Sims v. Adams,* 537 F.2d 829, 831 (5th Cir. 1976) (internal quotations, footnote, and citation omitted).

special injury as is required in order to establish a claim for malicious prosecution. They also contend that since Hinds's § 1983 and malicious prosecution claims fail as a matter of law, his conspiracy claim also fails as a matter of law because a conspiracy cannot be established unless there is an underlying wrong. Finally, these Defendants contend that Plaintiff's claims against them should also be dismissed on grounds of qualified immunity, official immunity, attorney immunity, and governmental immunity.

### III. *Summary Judgment Standard*

 Summary judgment shall be rendered when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 323–25, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Ragas v. Tennessee Gas Pipeline Co.,* 136 F.3d 455, 458 (5th Cir.1998). A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). When ruling on a motion for summary judgment, the court is required to view all inferences drawn from the factual record in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Ragas,* 136 F.3d at 458.

 Once the moving party has made an initial showing that there is no evidence to support the nonmoving party's case, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine fact issue. *Matsushita,* 475 U.S. at 586, 106 S.Ct. 1348. Mere conclusory allegations are not competent summary judgment evidence, and thus are insufficient to defeat a motion for summary judgment. *Eason v. Thaler,* 73 F.3d 1322, 1325 (5th Cir.1996). Unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence. *See Forsyth v. Barr,* 19 F.3d 1527, 1533 (5th Cir.), *cert. denied,* 513 U.S. 871, 115 S.Ct. 195, 130 L.Ed.2d 127 (1994). The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his claim. *Ragas,* 136 F.3d at 458. Rule 56 does not impose a duty on the court to "sift through the record in search of evidence" to support the nonmovant's opposition to the motion for summary judgment. *Id.; see also Skotak v. Tenneco Resins, Inc.,* 953 F.2d 909, 915–16 & n. 7 (5th Cir.), *cert. denied,* 506 U.S. 832, 113 S.Ct. 98, 121 L.Ed.2d 59 (1992). "Only disputes over facts that might affect the outcome of the suit under the governing laws will properly preclude the entry of summary judgment." *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505. Disputed fact issues which are "irrelevant and unnecessary" will not be considered by a court in ruling on a summary judgment motion. *Id.* If the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to its case and on which it will bear the burden of proof at trial, summary judgment must be granted. *Celotex,* 477 U.S. at 322–23, 106 S.Ct. 2548.

### IV. *Analysis*

### A. **Plaintiff's Federal Claims**

Section 1983 provides that

[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the

District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law.

42 U.S.C. § 1983. At the outset, the court must therefore determine whether Hinds has sufficiently alleged a constitutional violation. *See Siegert v. Gilley,* 500 U.S. 226, 232, 111 S.Ct. 1789, 114 L.Ed.2d 277 (1991) (holding that the court must first determine "whether the plaintiff has asserted the violation of a constitutional right at all"); *see also Baker v. McCollan,* 443 U.S. 137, 140, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979) ("The first inquiry in any § 1983 suit therefore is whether the plaintiff has been deprived of a right 'secured by the Constitution and laws.' ").

The essence of Plaintiff Hinds's claim is that DISD, its officials, and attorneys retaliated, and conspired to retaliate, against him by filing a baseless and frivolous action alleging violations of RICO (Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961, *et seq.*), mail fraud, wire fraud, and civil conspiracy against him, Venable, Finlan, and Grant. In other words, the basis for the present lawsuit is the earlier lawsuit alleging RICO violations, mail fraud, wire fraud, and civil conspiracy, and the present lawsuit would not exist but for the filing of the earlier lawsuit in September 1995 by DISD and its officials against Hinds and the three other individuals.

In *Venable v. Keever,* 61 F.Supp.2d 552 (N.D.Tex.1999), this court held that the filing of an allegedly retaliatory counterclaim seeking declaratory judgment in state court on a matter already pending before that state court was not a violation of the First Amendment right of access to the courts.[7] In *Venable,* the plaintiffs chided the court for its initial ruling and asserted that the court did not understand the nature of the claim they were raising. The court, out of its desire to view the matter in the light most favorable to the plaintiffs and give them another bite at the apple, allowed additional briefing on the matter. In a subsequent opinion, the court incorporated and reaffirmed its earlier holding and further held that the Plaintiffs failed to establish their civil conspiracy claim. The later opinion was not published but can be found at *Venable v. Keever,* No. 96–CV–0580–L, 2000 WL 1281206 (N.D.Tex. Sept.8, 2000). Finlan, who was a named plaintiff in the action, appealed to the United States Court of Appeals for the Fifth Circuit. In an unpublished opinion, the Fifth Circuit dismissed the appeal as frivolous. *See Venable v. Keever,* 263 F.3d 162 (5th Cir.2001).

---

**7.** The court notes with some amusement an article in the *Dallas Observer,* in which the columnist accused the court of appropriating "whole passages of [Justice] Stewart's state court opinion into some of his own recent writings in civil rights cases that Finlan has before him." Jim Schutze, *You Say Commie, I Say Nazi, Dallas Observer,* February 1–7, 2001, at 11, 12. The reality of the matter is that this court issued its initial opinion on August 24, 1999, as reflected in 61 F.Supp.2d 552 (1999), and Justice Stewart's opinion was issued over a *year* later on August 28, 2000, as reflected in 27 S.W.3d 220 (2000). Neither diligence nor truth in journalism appears to exist on the part of the columnist or those spoon-feeding him the information. Moreover, the article demonstrates a total lack of understanding of the issue involved. This court does not condone or approve of the filing of baseless or frivolous lawsuits. All the court has said is that if a lawsuit is baseless or frivolous, the appropriate place to obtain sanctions or relief is in state court. The filing of a frivolous lawsuit does not transform some perceived want or expectation into a constitutional right.

The key issues or claims that Hinds raises in this action are strikingly similar, if not identical, to those raised and disposed of by this court and the Fifth Circuit in *Venable.* In *Venable,* the issue was an allegedly retaliatory counterclaim; in the present case, the issue is an allegedly retaliatory lawsuit. The court sees no meaningful distinction between a retaliatory counterclaim and a retaliatory lawsuit. If there is any distinction, it is infinitesimal and would have no impact on the court's analysis of Plaintiff's claims in this action. Accordingly, the holding in *Venable* and the authorities cited therein should foreclose the present action by Hinds. The court, nevertheless, will proceed with its analysis of Plaintiff's claims in this action. The court characterizes Hinds's § 1983 claims as (a) denial of his right to free speech and right of petition in that he allegedly has been denied access to the courts, (b) retaliation in the form of a lawsuit for exercising his free speech, (c) denial of or interference with his right to practice law and represent his clients effectively, and (d) conspiracy to violate his civil rights.

**1. Access to the Courts**

 The court must first decide whether Plaintiff has alleged the violation of a constitutional right with respect to denial of access to the courts. The Supreme Court has found in the First Amendment a constitutional basis for the right of access to the courts is an aspect of the right of petition. *California Motor Transport Co. v. Trucking Unlimited,* 404 U.S. 508, 510, 92 S.Ct. 609, 30 L.Ed.2d 642 (1972). The Fifth Circuit has recognized the First Amendment right of access to the courts and stated that it is well established that access to the courts is protected by the First Amendment right to petition for redress of grievances. *Wilson v. Thompson,* 593 F.2d 1375, 1387 (5th Cir. 1979); *Ryland v. Shapiro,* 708 F.2d 967,

971–72 (5th Cir.1983). The constitutional right of access to the courts is a facilitative right "designed to ensure that a citizen has the opportunity to exercise his or her legal rights to present a cognizable claim to the appropriate court and, if that claim is meritorious, to have the court make a determination to that effect and order the appropriate relief." *Foster v. City of Lake Jackson,* 28 F.3d 425, 430 (5th Cir.1994) (quoting *Crowder v. Sinyard,* 884 F.2d 804, 814 (5th Cir.1989), *cert. denied,* 496 U.S. 924, 110 S.Ct. 2617, 110 L.Ed.2d 638 (1990)). The right of access to the courts is implicated "where the ability to file suit was delayed, or blocked altogether." *Foster v. City of Lake Jackson,* 28 F.3d at 430. In other words, the right of access to the courts is restricted to a facilitative right to bring a suit without official impediment. *Hale v. Townley,* 45 F.3d 914, 920 (5th Cir.1995); *Foster v. City of Lake Jackson,* 28 F.3d at 430.

Specifically, the court must decide whether Hinds's allegations regarding the filing of the allegedly retaliatory lawsuit in September 1995 by DISD and its officials against him asserts a violation of his constitutional right of access to the courts. Hinds has generically alleged a violation of the constitutional right of access to the courts; however, he has not alleged that his ability to file suit was in any way delayed or blocked altogether. He has not even alleged that the lawsuit was an official impediment to his access to the courts. Since Hinds has failed to allege that his ability to file suit was delayed, or blocked altogether, or *allege facts which would establish such,* he has not alleged the violation of an actual constitutional right at all. For the reasons stated, Plaintiff's allegations do not state the violation of a constitutional right, and Defendants are entitled to judgment as a matter of law on this claim.

The court in no way intimates that the filing of a frivolous retaliatory lawsuit is proper. The court, of course, does not condone such litigation tactics and conduct. If Defendants filed such a lawsuit in state court without a basis in law or fact, the proper remedy is for the state court to impose any sanctions it deems appropriate. The court finds no authority, and Hinds cites none, which holds or intimates that the parameters of the right to be free from retaliation by government officials for expressing one's First Amendment rights even marginally include the right to be free from a counterclaim or lawsuit. As the Fifth Circuit aptly stated, "After all, companies and citizens have a *constitutional right to file lawsuits*, tempered by the requirement that the suits have an arguable basis." *Scrivner v. Socorro Indep. Sch. Dist.*, 169 F.3d 969, 972 (5th Cir.1999) (emphasis added). What the court simply has held is that the filing of an allegedly retaliatory lawsuit, under the facts of this case, is not a violation of Hinds's First Amendment rights.

The United States Constitution protects rights which are basic and fundamental to our society. Not every perceived harm or wrong by a state official rises to the level of a constitutional violation, and the use of technical buzzwords and legal legerdemain does not elevate or transform every wrong or perceived wrong into a constitutional violation. Plaintiff Hinds cites no relevant authority that accords his allegations constitutional protection. Indeed, in *Johnson v. Louisiana Dep't of Agric.*, 18 F.3d 318, 320 n. 1 (5th Cir.1994), the Fifth Circuit held that *retaliatory legal proceedings did not state a cause of action under the First Amendment.* The court determines that *Johnson* is closely analogous to the present case and considers it controlling.

Moreover, even assuming that Hinds has alleged the violation of an actual constitutional right by asserting that the allegedly retaliatory lawsuit denied him access to the courts and free speech, his claim still fails. The summary judgment record necessarily establishes instances where Hinds filed a lawsuit on his behalf or that of a client, and the ability to bring such a lawsuit was not officially impeded by any of the Defendants. Indeed, the summary judgment record establishes that neither Plaintiff's access to the courts nor his free speech has suffered any impairment or impediment by the Defendants' filing of the lawsuit in September 1995 in state court. Plaintiff has, in fact, accessed the courts by this specific lawsuit as attorney and client, and by his active participation as an attorney for clients in the state litigation.

## 2. Retaliation

Alternatively, Plaintiff Hinds's First Amendment retaliation claim is foreclosed because he has failed to allege a constitutional claim and establish each element of the underlying state tort claim—malicious prosecution. *See Johnson v. Louisiana Dep't of Agric.*, 18 F.3d 318, 320 (5th Cir. 1994); *see also Colson v. Grohman*, 174 F.3d 498, 513 n. 8 (5th Cir.1999). In *Johnson* and this case, the allegations in essence are that there was an abuse or misuse of the legal system to accomplish a retaliatory purpose. Specifically, in *Johnson*, the plaintiff, the owner of an aerial application business, filed a § 1983 lawsuit against the Louisiana Department of Agriculture ("LDOA"), its commissioner, other state officials, and the local sheriff. On four separate occasions between 1982 and 1984, the LDOA brought charges against Johnson for violating the state pesticide laws. The commissioner sanctioned Johnson on each occasion, and the penalties became more severe each time. Finally, the LDOA revoked Johnson's license and his certification to apply pesticides. Johnson's cropdusting business ended at this

time. *See Johnson v. Louisiana Dep't of Agric.,* 18 F.3d at 319–20.

 Johnson contended that the defendants violated his First Amendment rights by their "coercive attempts to stifle him and his free expression of speech," and that the defendants "targeted him for prosecution and sanctions because he would not shut up and acquiesce to the mistreatment inflicted upon him by the LDOA." *Id.* at 320. The Fifth Circuit squarely held that Johnson did not state a claim under the First Amendment. *Id.* n. 1. The Fifth Circuit stated that if Johnson had asserted a claim, it was one for malicious prosecution in violation of his First Amendment rights, and expressed doubt whether the United States Constitution even embraces such a claim. *Id.* at 320. The Fifth Circuit ended its analysis by holding that, if the First Amendment embraces a malicious prosecution claim, a plaintiff "must allege a deprivation of a constitutional right" and "establish all of the elements of the common law tort action." *Id.* Hinds's claims are closely similar to those asserted in *Johnson,* except Hinds is an attorney and therefore adds allegations regarding his inability to practice law and effectively represent his clients. The court also determines that it is of no moment that the alleged retaliatory action in *Johnson* was a series of administrative hearings and proceedings, and here it is an allegedly retaliatory lawsuit. The court thus finds that Plaintiff's First Amendment claim, to the extent asserted, is more closely analogous to those raised by the plaintiffs in *Johnson* and *Colson.*

 Even assuming that Plaintiff Hinds has alleged or established the deprivation of a First Amendment right, he must also establish all of the elements of the state law tort of malicious prosecution. Under Texas law, the elements of malicious prosecution for a civil claim are: (1) the institution of or continuation of civil

proceedings against the plaintiff; (2) by or at the insistence of the defendant; (3) malice in the commencement of the proceeding; (4) lack of probable cause for the proceedings; (5) termination of the proceeding in plaintiff's favor; and (6) special damages. *Texas Beef Cattle Co. v. Green,* 921 S.W.2d 203, 207 (Tex.1996). The court determines that Plaintiff Hinds has not established that he suffered special damages. The mere filing' of a lawsuit is insufficient to establish the special injury requirement. *Id.* at 208–09. In addition to the filing of a suit, there "must be some physical interference with a party's person or property in the form of an arrest, attachment, injunction, or sequestration." *Id.* at 209. No evidence exists to establish that such has occurred to Hinds. With respect to damages, Hinds states in conclusory fashion that he "suffered those special damages to a legal practitioner who must rely upon his reputation and the confidence of his clients in order to effectively pursue his livelihood." Complaint ¶ 22. Hinds, however, offers no competent summary judgment evidence to support these alleged damages. He has not established that his reputation has been damaged, that prospective clients have refused to hire him because of the lawsuit, or that he has lost clients as a result of the lawsuit.

As a further effort to establish injury, Hinds makes the following statements:

> A number of persons with whom I came into contact in the days following the press release and the TV news reporting told me that they had seen the report and were greatly surprised to see me named as a defendant to such claims. Some of these persons indicated that they were certain that my reputation and credibility had been seriously damaged among persons who did not know me well enough to be certain of my honesty. Based on my more than 24

years of practicing law and my extensive contacts with a large number and variety of clients and my knowledge of what they look for in an attorney they wish to retain to represent them, and upon my conversations with other lawyers having similar experience, it is my opinion that my reputation, credibility, and ability to attract and hold clients has been damaged by the making and extraordinary publishing of these allegations.

. . . . .

Based upon my experience in the practice of law and upon my having dealt with many clients and upon my having had conversations with many attorneys who likewise have practiced law for many years, it is my opinion that a lawyer's reputation is the single most important asset in his profession. It is, in my opinion, property used in the profession of practicing law just as are the tools in any other profession and its value can be either enhanced or diminished by the unlawful actions of others, just as any other property utilized in any other occupation. In this instance, in my opinion, my reputation was and is damaged by the actions of defendants and my firm and I have suffered financial injury as the direct result of such actions. .

Affidavit of Ronald D. Hinds ¶¶ 5, 8. These statements are simply uninformative insofar as creating a genuine issue of material fact as to special injury or damages. At best, the statements are speculative and conjectural. The statements are devoid of any proof of special damages. As previously stated, no competent summary judgment evidence is in the record that Hinds has lost clients, that prospective clients have turned away from him, that his reputation has *in fact* suffered, or that he has been unable to practice law and represent clients as a result of the lawsuit filed in September 1995.

The court also concludes that Hinds has not established a lack of probable cause, one of the necessary elements to maintain a state malicious prosecution claim. That the DISD Defendants, some seven months after the original petition was filed, filed a third amended petition shortly before a hearing, which deleted the RICO, mail fraud and wire fraud allegations, does not establish the lack of probable cause. Why these claims were deleted is not entirely clear, and Plaintiff has come forth with no competent summary judgment evidence to establish that no probable cause existed for those claims. Perhaps there was probable cause, perhaps there was not; however, Plaintiff, under the applicable standards, must come forward with competent evidence to establish each element of his claim on which he has the burden of proof. Hinds has not done this with respect to the lack of probable cause. He offers the affidavit of Carver Dan Peavy; however, the affidavit is riddled with hearsay, conclusory and speculative statements, and improper inferences not supported by competent summary judgment evidence. In the scheme of things, the affidavit is quite uninformative and is essentially rendered useless. The type of speculative and unsupported damages set forth by Plaintiff Hinds simply does not meet the special injury requirement as required under Texas law. Since Plaintiff has not made the necessary showing of a special injury, his First Amendment claim necessarily fails.

### 3. Wrongful Deprivation of Rights by Filing a Lawsuit that is Illegal or not Cognizable Under Texas Law

 The court does not understand why Hinds asserts this as a § 1983 claim. By its plain language, § 1983 provides a cause of action and remedies for violations or deprivations secured or guaranteed by the United States Constitution and federal statutes. The claim that Hinds asserts

finds it source in Texas law; it is not one secured by the United States Constitution or federal law. Accordingly, any attempt to assert such a § 1983 claim fails as a matter of law. Section 1983 can provide no relief for Plaintiff on this claim.

### 4. Conspiracy

■ Hinds loosely makes references to a conspiracy by Defendants to violate several of his constitutional rights and that the filings of the September 1995 lawsuit was in essence the culmination of the conspiracy. Liability may be imposed under § 1983 based upon a conspiracy; however, a conspiracy claim is not actionable unless there is an actual constitutional or statutory violation. *See Kerr v. Lyford,* 171 F.3d 330, 340–41 (5th Cir.1999); *Hale v. Townley,* 45 F.3d 914, 920 (5th Cir.1995); *Cinel v. Connick,* 15 F.3d 1338, 1343 (5th Cir. 1994). A conspiracy by itself is not actionable under § 1983. *Pfannstiel v. City of Marion,* 918 F.2d 1178, 1187 (5th Cir. 1990). The court has ruled that Plaintiff has not alleged or established the violation of an actual constitutional right. Since there is no constitutional violation, there is no derivative conspiracy claim. Accordingly, there is no genuine issue of material fact regarding any claim of conspiracy, and all Defendants are entitled to judgment as a matter of law regarding this claim.

### B. Plaintiff's State Claim of Malicious Prosecution

In resolving the § 1983 claim asserted by Plaintiff Hinds, the court held that Plaintiff could not establish each of the elements necessary to maintain a claim for malicious prosecution under state law. Plaintiff's state law tort of malicious prosecution therefore necessarily fails, and there is no genuine issue of material fact regarding this claim. Accordingly, all Defendants are entitled to summary judgment on Plaintiff's state malicious prosecution claim.

### IV. *Rule 56(f) Continuance*

■ In his responses to all Defendants, Plaintiff Hinds makes objections and seeks a continuance pursuant to Fed.R.Civ.P. 56(f), contending that he has not been able to obtain discovery of any matter of substance from any of Defendants. Although Hinds did not file a formal motion, the court treats his Rule 56 affidavits and objections contained within his responses to Defendants' summary judgment motion as a motion for a Rule 56(f) continuance. Contrary to the language contained in *Access Telecom, Inc., v. MCI Telecomms. Corp.,* 197 F.3d 694, 719 (5th Cir.1999), Rule 56(f) *per se* does not require a motion, but does require the filing of an affidavit. Plaintiff Hinds, by attaching the affidavit to his responses and making it clear to the court of his objection to proceeding with the summary judgment motions, has satisfied the procedural requirements of Rule 56(f). In support of the Rule 56(f) continuance, Plaintiff Hinds provides the affidavit of Jeanne Crandall, dated June 15, 1998.

Rule 56(f) authorizes a continuance "[s]hould it appear from the affidavits of a party opposing the motion that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition . . . ." The Rule is an essential ingredient of the federal summary judgment scheme, and provides a mechanism for dealing with the problem of premature summary judgment motions. *Celotex Corp., v. Catrett,* 477 U.S. 317, 326, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The continuance authorized by Rule 56(f) is a safe harbor built into the rules so that summary judgment is not granted prematurely. *Union City Barge Line, Inc. v. Union Carbide Corp.,* 823 F.2d 129, 136 (5th Cir.1987).

■ To comply with the Rule, the party opposing summary judgment need

only file the specified affidavit, explaining why he cannot oppose the summary judgment motion on the merits. *Id.* Rule 56(f) motions are treated and reviewed liberally; technical, rigid scrutiny of a Rule 56(f) motion is inappropriate; *Id.,* however, since the burden is not a heavy one, the nonmovant must justify his entitlement to a continuance by presenting specific facts explaining his inability to make a substantive response. *Id.* at 137 (citing *SEC v. Spence & Green Chem. Co.,* 612 F.2d 896, 901 (5th Cir.1980), *cert. denied,* 449 U.S. 1082, 101 S.Ct. 866, 66 L.Ed.2d 806 (1981)). A claim that further discovery or a trial might reveal facts of which the nonmovant is currently unaware is insufficient. *Washington v. Armstrong World Indus., Inc.,* 839 F.2d 1121, 1123 (5th Cir.1988). A party may not rely on vague assertions that additional discovery will produce needed, but unspecified facts, *Union City,* 823 F.2d at 137, but instead must identify a genuine issue of material fact that justifies the continuance pending further discovery. *See Woods v. Federal Home Loan Bank Bd.,* 826 F.2d 1400, 1415 (5th Cir. 1987), *cert. denied,* 485 U.S. 959, 108 S.Ct. 1221, 99 L.Ed.2d 422 (1988). To carry his burden on a Rule 56(f) motion, Plaintiff Hinds must show why the discovery is needed, and how the discovery will allow him to demonstrate a genuine issue of material fact. *Stults v. Conoco, Inc.,* 76 F.3d 651, 657–58 (5th Cir.1996); *Krim v. BancTexas Group, Inc.,* 989 F.2d 1435, 1442 (5th Cir.1993). Finally, in conjunction with a nonmovant's request for additional discovery, the nonmovant must establish that he has diligently pursued relevant discovery. *Wichita Falls Office Assocs. v. Banc One Corp.,* 978 F.2d 915, 919 (5th Cir.1992).

In the present case, Ms. Crandall states, "[i]f discovery were permitted, I believe that Plaintiff would be able to present admissible evidence, including admis-

sions on audiotapes and DISD documents that would establish each of the elements in Plaintiff's Original Complaint." Affidavit of Jeanne Crandall at 2. The affidavit of Ms. Crandall presents several problems. First, the affidavit is dated June 15, 1998, almost three years prior to the filing of Defendants' summary judgment motions. As such, it does not reflect the current state of affairs regarding the need for or lack of discovery. Second, the affidavit does not establish that Plaintiff has been diligent in pursuing relevant discovery. The docket sheet does not reflect what action Plaintiff or the court took regarding the objections to discovery and motions for protective order. Moreover, at the status conference hearing on January 24, 2001, Plaintiff did not inform the court that additional discovery was needed. Third, the affidavit is too tentative in that it states Ms. Crandall *believes* discovery will produce admissible evidence. The affidavit, other than in conclusory fashion, does not state *how* the additional discovery will create a genuine issue of material fact. The conclusory allegation is made that discovery "would establish each of the elements in Plaintiff's Original Complaint," but does not specify or outline how the additional discovery will so establish such elements. As such, the affidavit falls short of the standards necessary to justify a Rule 56(f) continuance. Moreover, as the court has held that no constitutional violation has been alleged, discovery would be of no value in creating a genuine issue of material fact. For these reasons, Plaintiff's request for a continuance under Rule 56(f) to obtain additional discovery to respond to the pending summary judgment motions is **denied.**

### V. *Miscellaneous*

### A. Defendant Yvonne Ewell

The DISD Defendants stated in their Answer to Plaintiff's First Amended Com-

plaint, filed April 13, 2001, that "Dr. Ewell is deceased." These Defendants also acknowledge in their Motion for Summary Judgment, filed April 12, 2001, that Defendant Ewell is deceased. Although not formally filed as a separate document as a suggestion of death, the court determines that the statements regarding Defendant Ewell's death are sufficiently stated on the record through a filed document, which was served upon Plaintiff Hinds. More than 90 days have passed since the suggestion of death on the record, and Plaintiff Hinds has filed no motion for substitution of parties for Defendant Ewell. Accordingly, this action is dismissed with prejudice against Defendant Ewell. *See* Fed. R.Civ.P. 25(a)(1).

### B. Defendant Dan Peavy

Defendant Dan Peavy is proceeding *pro se,* as no attorney has filed an entry of appearance on his behalf since the court allowed his previous attorney to withdraw. No motion for summary judgment has been filed on his behalf. The court *sua sponte* raises the issue of summary judgment on behalf of Defendant Peavy, and Plaintiff Hinds is directed to respond by **March 8, 2002** and state why summary judgment should not be granted on behalf of Defendant Peavy for the same reasons it was granted in favor of the other trustees of the DISD.

### C. Service on Reese

As stated before, Reese is mentioned in the body of Plaintiff's Complaint, but not in the caption. No answer has been filed on Reese's behalf, and no motion for summary judgment was filed on his behalf. From the record, it appears that no service was effected on Reese. Accordingly, Plaintiff is directed to serve Reese no later than **March 8, 2002** or show good cause in writing to the court why service could not be effected on Reese by this date. Failure to comply with this directive *will* result in dismissal of the action against Reese without prejudice pursuant to Fed.R.Civ.P. 4(m).

### D. Arguments or Issues not Addressed

The court did not address in writing certain arguments or issues raised by the parties. This, of course, does not mean that the court did not review or consider the argument or issue. If an argument or issue was not addressed in writing by the court, the court did not believe the matter to be necessary in ruling on the motions in question. For example, the court concluded that Hinds did not state a constitutional violation or injury; hence, the issue of qualified immunity becomes moot. *See Saenz v. Heldenfels Bros., Inc.,* 183 F.3d 389, 392 (5th Cir.1999).

### VI. *Conclusion*

For the reasons stated herein, there is no genuine issue of material fact with respect to Plaintiff's federal or state claims. Accordingly, the court **grants** the Motion for Summary Judgment of the DISD and the DISD Defendants; **grants** the Motion for Summary Judgment of Defendants Rich, Friedman, and Friedman & Associates, P.C.; and **grants** Defendants Schwartz and Eichelbaum, P.C.'s and Dennis Eichelbaum's Second Motion for Summary Judgment. This action is hereby **dismissed with prejudice** against Defendants DISD, Kathleen Lcos, Hollis Brashear, Jose Plata, Yvonne Ewell, Sandy Kress, William Keever, Kathlyn Gilliam, Chad Woolery, Lynda McDow, Larry Friedman, Friedman & Associates, P.C., Alan Rich, Schwartz & Eichelbaum, P.C., and Dennis Eichelbaum. Judgment will issue by separate document, as required by Fed.R.Civ.P. 58, at a later date.